**In re Jeffrey P. HOULIK, also known as Jeff Houlik, doing business as Jeff Houlik Construction Inc., and Charla L. Houlik, also known as Charlie Houlik, doing business as Jeff Houlik Construction Inc., Debtor.**

**Santander Consumer, USA, Inc., Appellant,**

**v.**

**Jeffrey P. Houlik and Charla L. Houlik, Appellees.**

**BAP No. KS–11–096.**
**Bankruptcy No. 09–12159.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Oct. 29, 2012.

Nelson L. Mitten (Marilyn J. Washburn with him on the brief) of Riezman Berger, P.C., St. Louis, MO, for Appellant.

Jeffrey W. Rockett of Redmond & Nazar, LLP, Wichita, KS, for Appellees.

Before CORNISH, BROWN, and RASURE, Bankruptcy Judges.

CORNISH, Bankruptcy Judge.

Creditor appeals an order of the bankruptcy court awarding actual damages of $474.86 and punitive damages of $25,000 to the individual Chapter 11 debtors as a sanction for its repossession of their vehicle.[1] Believing the debtors had missed two monthly payments, creditor repossessed the vehicle approximately one year after the confirmed Chapter 11 plan revested the vehicle in debtors subject to creditor's rights in the collateral, and approximately two months after debtors' case had been voluntarily closed without discharge. After a thorough review of the record and applicable law, we conclude the bankruptcy court did not have the authority to award damages to debtors in this case. Accordingly, we reverse.

## I. BACKGROUND FACTS

Debtors Jeffrey and Charla Houlik (the "Houliks") filed for Chapter 11 relief in

---

**1.** The bankruptcy court also subsequently awarded the debtors' counsel attorney fees and expenses of $25,344.98 by separate order that is not the subject of this appeal.

July 2009. Under their plan of reorganization (the "Plan"), they proposed to pay the claim of CitiFinancial Auto, Inc. ("CitiFinancial"), which was secured by a lien on their 2005 Dodge Ram pickup truck (the "Truck"), in the amount of $17,305, in monthly installments of $343.[2] Mr. Houlik, a self-employed home contractor, used the Truck for work purposes. CitiFinancial did not object to the Plan, and it was confirmed in December 2009.[3] The Plan revested the Truck and other assets in the Houliks.[4] Additionally, the Plan provided that CitiFinancial "shall maintain its collateral rights, including those granted in any Adequate Protection Order."[5]

Pursuant to 11 U.S.C. § 1141(d)(5),[6] individual Chapter 11 debtors are not discharged from their debts upon plan confirmation, unless after notice and hearing, the bankruptcy court orders otherwise for cause. Instead, discharge ordinarily occurs when individual Chapter 11 debtors complete all payments under their plan. In this case, the implementation section of the Plan recited that debtors were to be discharged upon confirmation.[7] However, the disclosure statement was silent as to time of discharge,[8] and the bankruptcy court's confirmation order stated that

"[n]othing in this order or the Plan shall operate as a discharge of the debtors from Claims, obligations or liabilities to be paid or performed under the Plan[.]"[9] In October 2010, the Houliks requested and were granted a final decree by the bankruptcy court, thereby voluntarily closing their Chapter 11 case.[10]

In September 2010, CitiFinancial assigned the servicing of its claim against the Houliks on the Truck to Santander Consumer, USA ("Santander").[11] Santander, believing two monthly payments had not been made, repossessed the Truck on December 27, 2010, after a confrontation with the Houliks in front of their home. During such confrontation, Santander's repossession agent physically pushed Mr. Houlik and denied him access to the contents of the Truck.

Following repossession, counsel for the Houliks sent letters to both Santander and its counsel demanding the Truck be returned, but to no avail. Therefore, on January 5, 2011, the Houliks filed a motion to reopen their Chapter 11 case in order to pursue Santander for alleged violation of the automatic stay.[12] After the bankruptcy court entered an order granting the

2. *Debtors' Reorganization Plan [Dated] October 19, 2009* (the *"Plan "*) at 18, *in* Appellant's App. at 794, 810–11.

3. *Journal Entry and Order Approving Confirmation of Debtors' Reorganization Plan and Order Approving Disclosure Statement ("Confirmation Order"), in* Appellant's App. at 720.

4. *Plan* at 9, *in* Appellant's App. at 802.

5. *Id.* at 18, *in* Appellant's App. at 811.

6. Unless otherwise indicated, all future statutory references in text are to the Bankruptcy Code, Title 11 of the United States Code.

7. *Plan* at 9, *in* Appellant's App. at 802.

8. Appellant's Appendix does not contain the disclosure statement, but the bankruptcy

court made this factual finding in its opinion and it has not been challenged on appeal. *See Memorandum Opinion* at 3, *in* Appellant's App. at 689.

9. *Confirmation Order* at 7, *in* Appellant's App. at 726.

10. *See Bankruptcy Docket Sheet at Docket Nos. 112 and 115, in* Appellant's App. at 15–16.

11. For the sake of simplicity, hereafter we sometimes refer to Santander as if it were the creditor even though it is only CitiFinancial's servicing agent.

12. *Motion to Reopen Bankruptcy Case, in* Appellant's App. at 785.

motion to reopen,[13] the Houliks filed a "motion for order to show cause why violation of stay should not be entered," seeking turnover of the Truck and imposition of fees, costs, and sanctions against Santander.[14] The motion was set for hearing on March 10, 2011, with an objection deadline of February 28, 2011. In absence of any response by Santander, on March 9, 2011, the bankruptcy court entered a default order for turnover of the Truck and awarded damages, together with the costs and expenses of the action, including attorney fees, to the Houliks in the amount of $32,510.29.[15] Of that total, $29,064.29 were for damages claimed by the Houliks, which included lost work opportunities, a lost cell phone, and various lost tools. Also included in the damages were reimbursements for overhead expenses allegedly incurred by Mr. Houlik's business, including premiums for insurance on the Truck and general liability insurance, a contractor's license renewal fee, and construction storage building and trailer rentals.[16]

Santander returned the Truck to the Houliks on March 17, 2011, about 80 days after it had repossessed it. Shortly thereafter, Santander filed a motion to vacate the bankruptcy court's default order, alleging lack of proper service,[17] to which the Houliks responded, claiming proper service on Santander's registered agent.[18] On April 20, 2011, the bankruptcy court vacated the default order, directed Santander to respond to the Houliks' motion alleging stay violation within 21 days, and set a status hearing for May 26, 2011.[19] Santander timely filed its response, asserting it had properly exercised its rights to repossess the Truck.[20] At the status hearing, the bankruptcy court set an evidentiary hearing on the matter for July 19, 2011.[21]

Several days prior to the evidentiary hearing, the bankruptcy court entered an order directing that the parties be prepared to address its jurisdiction to hear and determine the matter.[22] As the following discussion clearly illustrates, neither counsel for the Houliks nor counsel for Santander were helpful in clarifying

---

13. *Order Approving Reopening of Bankruptcy Case, in* Appellant's App. at 730.

14. *Motion for Order to Show Cause Why Violation of Stay Should not be Entered, for Immediate Turnover of 2005 Dodge Ram 2500 and Imposing Fees, Costs and Sanctions, in* Appellant's App. at 26.

15. *Order to Show Cause Why Violation of Stay Should not be Entered, for Immediate Turnover of 2005 Dodge Ram 2500 and Imposing Fees, Costs and Sanctions, in* Appellant's App. at 732.

16. *Id.* at 2–3, *in* Appellant's App. at 733–34.

17. *Motion to Vacate (In Part) Order of March 9, 2011 on Debtors' Motion for Order to Show Cause Why Violation of Stay Should not be Entered, for Immediate Turnover of 2005 Dodge Ram 2500 and Imposing Fees, Costs and Sanctions Filed by Santander Consumer USA, D/B/A Drive Financial as Agent for CitiFinancial Auto, in* Appellant's App. at 787.

18. *Debtors' Response to Motion to Vacate (In Part) Order of March 9, 2011 on Debtors' Motion for Order to Show Cause Why Violation of Stay Should not be Entered, for Immediate Turnover of 2005 Dodge Ram 2500 and Imposing Fees, Costs and Sanctions, in* Appellant's App. at 791.

19. *See Bankruptcy Docket Sheet at Docket No. 144, in* Appellant's App. at 20.

20. *Answer of Santander Consumer USA, Inc., to Debtors' Motion for Order to Show Cause Why Violation of Stay Should Not be Entered, Etc., in* Appellant's App. at 28.

21. *See Bankruptcy Docket Sheet at Docket No. 151, in* Appellant's App. at 21.

22. *Order Concerning Trial on July 19, 2011, in* Appellant's App. at 764.

the jurisdictional problem, and in fact only succeeded in engendering significant confusion regarding the issue.

In his opening remarks at the evidentiary hearing, counsel for the Houliks stated that

[i]n hindsight, that motion for stay violation should've actually been filed as a motion for violation of the discharge injunction, that the debtors had come through bankruptcy, that the debt at issue was a part of the plan, that it was dealt with in the plan, and I'll cite to you the plan[.] [23]

But when questioned by the bankruptcy court, counsel confirmed he was not taking the position that the Houliks had received a discharge, and was relying on the jurisdiction retention provisions contained in Article 13 of the Plan, and proceeding on the theory that Santander had breached the contract that is the Plan by wrongfully repossessing the Truck.[24]

Counsel for Santander then took the position that the Houliks had been granted a discharge at confirmation.[25] Accordingly, he argued the Houliks' motion for alleged violation of the stay was not an appropriate matter for relief because pursuant to § 362(c)(2), the automatic stay terminated when the case was closed and/or when the discharge was entered.[26] In response to the bankruptcy court's question about jurisdiction to enforce the discharge injunction, Santander's counsel acknowledged jurisdiction, but added "that particular form of action needs to be expressed in that fashion. And I'm not so sure that the damage is coextensive with violation of the automatic stay[.]" [27] Thereafter, the bankruptcy court questioned Santander's counsel about jurisdiction based on the retention of jurisdiction provisions in the Plan granting the bankruptcy court authority to oversee Plan implementation.[28] Santander's counsel responded, "that might provide the Court some jurisdiction, but again, I think what we have here is a claim that is, currently as pled, is not the proper claim." [29]

Regarding the merits of the claim, the Houliks' counsel informed the bankruptcy court that Santander could not find any missing Truck payments in their records, and that the Houliks had suffered significant damages as a result of the repossession.[30] Santander's counsel then confirmed that although Santander's computer records, which had been transferred from CitiFinancial, showed the Houliks were two payments behind at the time the Truck was repossessed, Santander was unable to substantiate precisely which payments had not been made.[31] The bankruptcy court then heard testimony from both Mr. and Mrs. Houlik, as well as Mark Mooney, a Santander employee.[32]

23. *Transcript of Proceeding held on July 19, 2011 ("Transcript")* at 6–7, *ll.* 23–25, 1–5, *in* Appellant's App. at 36–37.

24. *Id.* at 11–12, 14, *in* Appellant's App. at 41–42, 44.

25. *Id.* at 15–16, *in* Appellant's App. at 45–46.

26. *Id., in* Appellant's App. at 45–46.

27. *Id.* at 17, *ll.* 18–22, *in* Appellant's App. at 47.

28. *Id.* at 18, *in* Appellant's App. at 48.

29. *Id.* at 18, *ll.* 13–16, *in* Appellant's App. at 48.

30. *Id.* at 12, *in* Appellant's App. at 42.

31. *Id.* at 19, *in* Appellant's App. at 49.

32. Following receipt of testimony, the bankruptcy court revisited the issue of jurisdiction. At that time, counsel for the Houliks appeared to once again change his tune. He did not explicitly state his clients had been granted a discharge. However, based on the bankruptcy court's statement that it could amend the

At the conclusion of the evidentiary hearing, the bankruptcy court announced that the parties had 14 days to submit a post-trial brief addressing whatever they thought necessary, but prohibited further responses or replies.[33] In its post-trial brief, Santander asserted it could not have violated the automatic stay because the Houliks closed their case in October 2010, and therefore pursuant to § 362(c)(2)(A), the stay terminated before the Truck was repossessed in December 2010.[34] Further, Santander argued it did not violate the discharge injunction for two reasons. First, contrary to its position at trial, Santander argued that pursuant to § 1141(d)(5)(A), the Houliks, as individual Chapter 11 debtors, did not receive a discharge upon Plan confirmation.[35] Second, Santander argued that even if the Houliks had received a discharge upon Plan confirmation, pursuant to § 1141(d)(1)(A), the discharge applied only to pre-confirmation debts and not the alleged missed Truck payments under the Plan it was attempting to enforce.[36] As a result, Santander argued the Houliks had not presented the bankruptcy court with any valid basis for relief.[37]

In their post-trial brief, the Houliks, also contrary to their initial position at trial, alleged they had been granted a discharge

upon Plan confirmation, and argued that pursuant to § 105, the bankruptcy court had authority to assess damages against Santander for violating the § 524(a)(2) discharge injunction.[38] For the first time in the proceeding, the Houliks argued Santander had violated § 524(i), which provides that a creditor's willful failure to credit payments received under a confirmed plan constitutes a violation of the discharge injunction if such failure causes material injury to a debtor. Specifically, the Houliks stated:

> through application of the post confirmation discharge and the injunction that attaches to the Debtors through section 524(a)(2) and (i), the acts of a creditor, like those taken by Santander Consumer USA on December 27, 2010 and continuing until after the March 17, 2011 return of the vehicle, produce consequences for the creditor by way of damages for violation of that injunction.[39]

On September 25, 2011, the bankruptcy court entered its memorandum opinion and order, which conformed the pleadings to the evidence and construed the Houliks' motion "as a motion to enforce the discharge injunction under § 524(a)(2) and (i) and for appropriate contempt sanctions."[40] The bankruptcy court concluded that Santander had admitted "that it willfully failed

pleadings to conform to the evidence, and in response to questioning, counsel asked for damages allowable under § 524. *See id.* at 167–72, *in* Appellant's App. at 197–202.

**33.** *Id.* at 184, *in* Appellant's App. at 214.

**34.** *Post–Trial Brief of Santander* at 3, *in* Appellant's App. at 831.

**35.** *Id.* at 3–4, *in* Appellant's App. at 831–32.

**36.** *Id., in* Appellant's App. at 831–32.

**37.** *Id.* at 5, *in* Appellant's App. at 833.

**38.** *Post–Trial Brief of Jeffrey P. Houlik and Charla L. Houlik, Debtors and Movants* at 5–6,

*in* Appellant's App. at 840–41. The Houliks asserted: "Debtors' Plan contemplated the entry of a discharge upon confirmation of the Plan of Reorganization. Given that the discharge had been granted, the Debtors were protected by 11 U.S.C. § 524 and the injunction that it provides [against] the actions such as those taken by Santander Consumer USA[.]" *Id.* at 3–4, *in* Appellant's App. at 838–40.

**39.** *Id.* at 6, *in* Appellant's App. at 841.

**40.** *Memorandum Opinion* at 9–10, *in* Appellant's App. at 712–13.

to credit [the Houliks' Truck] payments in violation of § 524(a)(2) and § 524(i)." [41] It awarded the Houliks total actual damages of $474.86, which represented $193.10 for replacement of a cell phone and $281.76 for reimbursement of three months of insurance premiums paid on the Truck while it was in Santander's possession.[42] The bankruptcy court also awarded the Houliks punitive damages of $25,000.[43] Further, the bankruptcy court ordered that the costs of the proceeding be assessed against Santander,[44] and that "[t]he Houliks should recover their reasonable attorney's fees and expenses incurred as a result of Santander's misconduct [which] should in no way be limited by the small amount of damages awarded here." [45] Santander timely appealed the bankruptcy court's September 25, 2011, order to this Court on October 10, 2011.[46]

## II.  APPELLATE JURISDICTION

This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[47] Neither party elected to have this appeal heard by the United States District Court for the District of Kansas. The parties have therefore consented to appellate review by this Court.

■ A decision is considered final "if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " [48] In this case, the order and judgment of the bankruptcy court determining Santander violated the discharge injunction and awarding the Houliks actual and punitive damages is final for purposes of review.[49]

## III.  STANDARD OF REVIEW

■ The bankruptcy court's interpretation of § 524 is a question of law subject to *de novo* review.[50] Whether a creditor's actions violated the discharge injunction is also a question of law subject to de novo review.[51] *De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy

---

41. *Id.* at 10, *in* Appellant's App. at 713.

42. *Id.* at 17, *in* Appellant's App. at 719.

43. *Id., in* Appellant's App. at 719.

44. *Id., in* Appellant's App. at 719.

45. *Id.* at 14–15, *in* Appellant's App. at 716–17. As previously mentioned, the bankruptcy court subsequently awarded the debtors' counsel attorney fees and expenses of $25,344.98, but that order is not before us on appeal.

46. Due to the Columbus Day holiday, the appeal was timely.

47. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002; 10th Cir. BAP L.R. 8001–3.

48. *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)).

49. *Culley v. Castleberry (In re Culley),* 347 B.R. 115, 2006 WL 2091199, at *1 (10th Cir. BAP July 24, 2006). The attorney's fees award that remained outstanding when this appeal was filed is separate from the merits of the order being appealed. *See id.* and *Budinich v. Becton Dickinson & Co.,* 486 U.S. 196, 199, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988) ("A question remaining to be decided after an order ending litigation on the merits does not prevent finality if its resolution will not alter the order or moot or revise decisions embodied in the order.").

50. *In re Culley,* 347 B.R. 115, 2006 WL 2091199, at *2 (citing *In re Edwards,* 214 B.R. 613, 618 (9th Cir. BAP 1997)).

51. *Id.*

court's decision.[52] The bankruptcy court's factual finding that a creditor's action constituted a willful violation of the discharge injunction is accorded more deference and is reviewed only for clear error.[53]

## IV. ANALYSIS

A brief restatement of the controlling facts will be helpful before beginning the analysis: 1) the Houliks are individual Chapter 11 debtors, and therefore not discharged from their debts until completion of the Plan unless an earlier discharge was entered for cause after notice and a hearing; 2) the Plan provided that the Houliks would make monthly payments on the Truck in the amount of $343, and that the creditor would maintain its collateral rights in the Truck;[54] 3) upon confirmation of the Plan by the bankruptcy court on December 29, 2009, the Plan revested the Truck and all other assets (except avoidance actions) in the Houliks;[55] 4) the Houliks requested and received a final decree and voluntarily closed their Chapter 11 case on October 5, 2010; and 5) Santander believed the Houliks had missed two monthly payments under the Plan and repossessed the Truck on December 27, 2010. We now turn to the significance of these facts in determining whether the bankruptcy court could provide the Hou-

liks with a remedy for Santander's alleged improper conduct based on the automatic stay, a discharge injunction, or its authority to oversee implementation, execution, and enforcement of the Plan.

### A. Automatic Stay

In the motion filed by the Houliks after they reopened their case, they alleged Santander had violated the automatic stay by repossessing the Truck. However, the bankruptcy court correctly concluded that at the time of repossession there was no automatic stay in place to prohibit Santander's conduct.[56] The Plan, which was confirmed on December 29, 2009, revested the Truck in the Houliks upon confirmation.[57] Pursuant to § 362(c)(1), the stay of an act against property of the estate continues only until such property is no longer property of the estate.[58] As a result, in this case, the automatic stay imposed with respect to the Truck when the Houliks filed their Chapter 11 petition terminated upon Plan confirmation. Additionally, § 362(c)(2) provides that the stay of any other act against the Houliks to collect on a prepetition claim continues only until the case is closed, the case is dismissed, or a discharge is granted or denied, whichever occurs first.[59] Thus, any stay of actions against the Houliks terminated when

**52.** *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

**53.** *In re Culley*, 347 B.R. 115, 2006 WL 2091199, at *2 (citing *In re McHenry*, 179 B.R. 165, 167 (9th Cir. BAP 1995)).

**54.** *Plan* at 18, *in* Appellant's App. at 811.

**55.** *Id.* at 9, *in* Appellant's App. at 802.

**56.** *Memorandum Opinion* at 7, *in* Appellant's App. at 693.

**57.** *Plan* at 9, *in* Appellant's App. at 802.

**58.** Section 362(c)(1) provides as follows:

> (c) Except as provided in subsections (d), (e), (f), and (h) of this section—
> > (1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate[.]
>
> 11 U.S.C. § 362(c)(1).

**59.** Section 362(c)(2) provides as follows:

> (c) Except as provided in subsections (d), (e), (f), and (h) of this section—
> > (2) the stay of any other act under subsection (a) of this section continues until the earliest of—
> > > (A) the time the case is closed;
> > > (B) the time the case is dismissed; or

their case was closed in October 2010.[60] As a result, Santander cannot be sanctioned for repossession of the Truck as a violation of the automatic stay.

## B. Discharge Injunction

■ Next we examine whether Santander's actions violated the § 524(a)(2) discharge injunction. To do so, we must first ascertain whether the Houliks in fact received a discharge. The Houliks are individual Chapter 11 debtors, and accordingly, pursuant to § 1141(d)(5), are discharged from their debts upon completion of plan payments and not upon plan confirmation, unless after notice and hearing, the court orders otherwise for cause.[61]

Here, the implementation section of the Plan briefly recited that debtors were to be discharged upon confirmation.[62] But nothing else indicates that the Houliks were in fact discharged upon confirmation of their Plan. The general provisions section of the Plan made no mention of discharge, and the disclosure statement was silent as to time of discharge. Further, the Plan confirmation order stated that "[n]othing in this order or the Plan shall operate as a discharge of the debtors from Claims, obligations or liabilities to be paid or performed under the Plan[.]"[63] Additionally, no discharge order was entered on the Official Form, as required by Federal Rule of Bankruptcy Procedure 4004(e), nor was notice of discharge sent to interested parties by the court clerk as required by Federal Rule of Bankruptcy Procedure 4004(g).

In its memorandum opinion, the bankruptcy court discussed the discharge issue,

---

(C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied[.]

11 U.S.C. § 362(c)(2).

**60.** We are aware that several bankruptcy courts have extended the protection of the automatic stay to individual Chapter 11 debtors who have closed their cases in order to terminate the obligations to pay United States Trustee fees and file monthly operating reports. Worried about the gap in protection for debtors caused by the BAPCPA provision delaying discharge until completion of the plan in most cases, a Massachusetts bankruptcy court utilized § 105 to "fashion a remedy." The remedy was to allow a debtor to close his case "administratively only," by ordering that the automatic stay continue and instructing the clerk of court not to issue notice of case closing without entry of discharge as required by Federal Rule of Bankruptcy Procedure 4006. *In re Mendez*, 464 B.R. 63 (Bankr. D.Mass.2011). According to the Massachusetts bankruptcy court, such an approach was conceived by "[t]he Jacksonville and Tampa Divisions of the United States Bankruptcy Court for the Middle District of Florida [who] have implemented a series of approved forms which individual debtors may use to accom-

plish precisely the result sought by the debtor in this case." *Id.* at 66–67.

On the other hand, an Alabama bankruptcy court declared that in fashioning such creative remedies, these courts exceed the scope of their authority. *In re Kerley*, No. 09–43154–JJR11, 2011 WL 5330667, at *2 (Bankr.N.D.Ala. Nov. 4, 2011) ("[I]t is up to Congress, and not this Court, to fashion the rules regarding what fees are due and when those fees may be waived.").

**61.** Section 1141(d)(5)(A) provides as follows:

(5) In a case in which the debtor is an individual—
    (A) unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan[.]
11 U.S.C. § 1141(d)(5)(A).

**62.** *Plan* at 9, *in* Appellant's App. at 802. Article III of the Plan states "[t]he Debtors shall also be discharged of all obligations except as otherwise required under the Disclosure Statement and Reorganization Plan."

**63.** *Confirmation Order* at 7, *in* Appellant's App. at 726.

but did not expressly find that the Houliks were discharged upon Plan confirmation.[64] As we interpret the opinion, the bankruptcy court found it unnecessary to specifically make such a factual finding, stating "even if the debtors did not receive a discharge at confirmation, Santander is still liable under § 524(i) for failing to properly apply and credit the debtors' payments made under the plan."[65] We strongly disagree. Based on the record before us, we conclude that the Houliks did not receive a discharge from their debts upon Plan confirmation. In absence of a discharge injunction under § 524(a)(2), § 524(i) cannot form the basis of sanctions against Santander for damages resulting from alleged wrongful repossession of the Truck.

Section 524(i) was added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), and provides as follows:

> The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan) *shall constitute a violation of an injunction under subsection (a)(2)* if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.[66]

Given that § 524(i) specifically refers to the discharge injunction in § 524(a)(2), the remedy afforded by this provision is clearly dependent upon the debtor having been granted a discharge.

■ In determining that § 524(i) provides the Houliks with a remedy prior to their discharge, the bankruptcy court relied on a brief discussion of the matter in *Collier on Bankruptcy*.[67] That respected treatise states in part:

> Section 524(i) provides a remedy for debtors whose creditors fail to properly credit plan payments. Under this provision, the creditor's willful failure to credit payments received under a confirmed plan in accordance with the plan, constitutes a violation of the injunction of section 524(a). *Although section 524(a) previously was limited to violations of the discharge order, section 524(i) is not limited to acts occurring after discharge.*[68]

Apparently, the bankruptcy court interpreted this statement to mean that, in the opinion of the *Collier* editors, an action under § 524(i) can be brought before a discharge has occurred. But the bankruptcy court cited no authority other than *Collier*, and to our knowledge, no other court has applied § 524(i) in such a manner. We think it more likely that the editors of *Collier* meant to convey that a § 524(i) enforcement proceeding brought *post-discharge* can relate to a creditor's *acts* of willful failure to credit payments in accordance with the plan *that occurred prior to discharge.*

---

**64.** In its memorandum opinion, the bankruptcy court made several inconsistent statements regarding the discharge that we are unable to reconcile. *See Memorandum Opinion* at 3, 8 & 15, *in* Appellant's App. at 689, 694 & 701.

**65.** *Memorandum Opinion* at 8, *in* Appellant's App. at 694.

**66.** 11 U.S.C. § 524(i) (emphasis added).

**67.** *Memorandum Opinion* at 8–9, *in* Appellant's App. at 694–95.

**68.** 4 *Collier on Bankruptcy* ¶ 524.08, at 524–62 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2011) (emphasis added).

Though not faced with precisely the same issue presented here, numerous bankruptcy courts have opined that § 524(i) provides only a post-discharge remedy.[69] As explained by an Alabama bankruptcy court:

> Section 524(i) would prohibit a creditor holding both secured and unsecured claims from crediting payments to unsecured claims that were specified in the plan for application to a secured claim; or more apropos, from applying payments earmarked for postpetition mortgage payments to prepetition arrears. The critical point is that the accounting to determine whether Section 524(i) has been violated comes at the end of the chapter 13 plan after all plan payments have been made, not during the case. If a debtor discovers during the chapter 13 case a creditor's internal accountings not crediting payments as specified in the plan, Section 524(i) provides no immediate remedy. Indeed no remedy is needed until completion of the plan, at which time the creditor must "true-up" its accounting to reflect that payments were applied in compliance with the plan.[70]

Additionally, though it was resolving a case filed pre-BAPCPA, the United States Court of Appeals for the First Circuit has commented:

> It will often be difficult in cases like this for a court to determine whether a debtor's cure rights have been satisfied until the debtor has met all of the obligations set forth in the confirm[ed] plan. Congress has acknowledged this difficulty implicitly in § 524(i), which declares that a creditor has violated the debtor's discharge injunction if it "willful[ly] fail[s] ... to credit payments received under a [confirmed Chapter 13] plan ... if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor." The provision grants the debtor a cause of action only once she has satisfied the terms of the Chapter 13 plan and received a discharge injunction pursuant to § 524.[71]

Likewise, because they have not yet received a discharge, we conclude that the Houliks have no § 524(i) cause of action with respect to Santander's alleged wrongful repossession of the Truck. A discharge is necessary to give rise to the § 524(a)(2) discharge injunction, which in turn is a prerequisite to bringing a proceeding pursuant to § 524(i), though that proceeding may relate to a creditor's conduct that occurred prior to the discharge.

## C. Jurisdiction to Enforce the Plan

■ In absence of an automatic stay or discharge injunction in place to prevent repossession of the Houliks' Truck, we now examine whether the bankruptcy court had the authority to sanction Santander for violating the Plan confirmation order pursuant to §§ 105, 1141, and 1142 of the Code.[72] Pursuant to § 1141(a), after confir-

---

69. *See In re Carlton*, 437 B.R. 412, 427–28 (Bankr.N.D.Ala.2010); *In re Anderson*, 382 B.R. 496 (Bankr.D.Or.2008); *In re Patton*, No. 08–23038, 2008 WL 5130096 (Bankr. E.D.Wis. Nov. 19, 2008); *In re Collins*, No. 07–30454, 2007 WL 2116416 (Bankr. E.D.Tenn. July 19, 2007).

70. *Carlton*, 437 B.R. at 428 n. 19.

71. *In re Nosek*, 544 F.3d 34, 48 n. 14 (1st Cir.2008) (citations omitted).

72. We note that many plans of reorganization, including the Plan in this case, contain jurisdiction retention provisions giving the bankruptcy court broad powers to determine matters arising in connection with the interpretation, enforcement, consummation, implementation, and administration of the plan. *See Plan, Art. XIII* at 26–30, *in* Appellant's App. at 819–823. However, because retention of jurisdiction provisions in a plan cannot broaden a bankruptcy court's jurisdiction, *see In re Resorts Int'l, Inc.*, 372 F.3d 154, 161

mation of a plan, the debtors and creditors are bound by the provisions thereof.[73] Implementation of the plan is governed by § 1142, which requires the debtor to carry out the plan and to comply with any orders of the court.[74] Further, § 1142 authorizes the bankruptcy court to "direct the debtor and any other necessary party ... to perform any ... act ... that is necessary for the consummation of the plan."[75] And § 105 empowers the bankruptcy court to issue any order necessary or appropriate to carry out the provisions of the Code, including sanctions.[76] But a bankruptcy court's jurisdiction is not derived from provisions of the Code, and is instead confined solely to proceedings described in Title 28 of the United States Code. In other words, §§ 105, 1141, and 1142 of the Code do not provide an independent basis for jurisdiction, and thus whether the bankruptcy

court acted beyond the scope of its authority in this matter must be determined by closely analyzing whether its actions fall within the jurisdictional grant of 28 U.S.C. §§ 157 and 1334. Also relevant to our examination here is the lack of an automatic stay or discharge injunction to support an exercise of jurisdiction. Accordingly, as the following analysis reveals, a bankruptcy court may have jurisdiction over some post-confirmation matters, but jurisdiction is factually dependent and we conclude that the bankruptcy court did not have jurisdiction over the action brought by the Houliks against Santander in this case.

▮▮▮▮ In general, bankruptcy courts "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11," also known as core proceedings,[77]

(3d Cir.2004) ("subject matter jurisdiction cannot be conferred by consent of the parties") (internal quotation marks omitted), it is not necessary for us to examine them in this case.

73. Section 1141(a) provides as follows:

(a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.
11 U.S.C. § 1141(a).

74. Section 1142(a) provides as follows:

(a) Notwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan and shall comply with any orders of the court.
11 U.S.C. § 1142(a).

75. *In re Lacy,* 335 B.R. 729, 738 (10th Cir. BAP 2006). Section 1142(b) provides as follows:

(b) The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.
11 U.S.C. § 1142(b).

76. *In re Scrivner,* 535 F.3d 1258, 1263 (10th Cir.2008). Section 105(a) provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.
11 U.S.C. § 105(a).

77. 28 U.S.C. § 157(b)(1). Section 157(b)(1) provides:

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core

and any "proceeding that is not a core proceeding but that is otherwise related to a case under title 11," also known as non-core proceedings.[78] "Core proceedings are proceedings which have no existence outside of bankruptcy. Actions which do not depend on the bankruptcy laws for their existence and which could proceed in another court are not core proceedings."[79] Resolution of the Houliks' claim does not require the interpretation or enforcement of bankruptcy law. Because no discharge injunction was entered and the automatic stay had expired, the Houliks are unable to state a claim for a violation of either. Their claim lacks an anchor to bankruptcy law sufficient to confer core jurisdiction; it is clearly one that could have proceeded in state court as an action for breach of contract or wrongful repossession.[80] Because it is a non-core proceeding, the bankruptcy court has jurisdiction over it only if it is sufficiently related to the Houliks' Chapter 11 bankruptcy case.

■■■■■ The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has adopted the formulation of "re-lated to" jurisdiction espoused by the United States Court of Appeals for the Third Circuit ("Third Circuit") in *Pacor, Inc. v. Higgins* ("*Pacor*"),[81] which focuses on whether the action potentially impacts administration of the bankruptcy estate. According to the Tenth Circuit:

> Related proceedings are civil proceedings that, in the absence of a bankruptcy petition, could have been brought in a district court or state court. The test for determining whether a civil proceeding is related in bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Although the proceeding need not be against the debtor or his property, the proceeding is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy estate.

A bankruptcy court has jurisdiction over disputes regarding alleged property of the bankruptcy estate at the outset

---

proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

**78.** 28 U.S.C. § 157(c)(1). Section 157(c)(1) & (2) provide:

(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

**79.** *Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1518 (10th Cir.1990) (per curiam) (citation omitted). *See also In re Ray*, 624 F.3d 1124, 1133 (9th Cir.2010); *In re Wilshire Courtyard*, 459 B.R. 416, 424–26 (9th Cir. BAP 2011).

**80.** *See* Kansas Uniform Consumer Credit Code, Kan. Stat. Ann. § 16a–5–101 et seq. and Kansas Uniform Commercial Code, Kan. Stat. Ann. § 84–1–101 et seq.

**81.** 743 F.2d 984, 994 (3d Cir.1984), *overruled on other grounds by Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 134–35, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995).

of the case. When property leaves the bankruptcy estate, however, the bankruptcy court's jurisdiction typically lapses, and the property's relationship to the bankruptcy proceeding comes to an end.[82]

A bankruptcy court's statutorily defined jurisdiction is the same after confirmation of a plan as it was before confirmation, i.e., 28 U.S.C. §§ 157 and 1334 control in both situations. However, it is generally accepted that a bankruptcy court's jurisdiction narrows to some extent after plan confirmation with respect to non-core proceedings and "related to" jurisdiction.[83]

Although the Tenth Circuit has decided a case addressing the issue of post-confirmation "related to" jurisdiction, it has not articulated a specific test therefor.[84] Courts in other circuits, beginning with the Third Circuit, have adopted a "close nexus" test for determining post-confirmation jurisdiction. In *In re Resorts International, Inc.*, the Third Circuit, building on its formulation of related to jurisdiction in *Pacor*, yet not applying it literally, determined that "[a]t the post-confirmation stage, the claim must affect an integral aspect of the bankruptcy process—there must be a ***close nexus*** to the bankruptcy plan or proceeding."[85] Further, the Third Circuit stated: "[m]atters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus."[86]

The Third Circuit's test has not, however, been universally adopted. In the liquidating plan context, one circuit court has, understandably, applied a standard broader than the close nexus test.[87] But courts in some other circuits have adopted a standard narrower than the close nexus test.[88]

---

**82.** *In re Gardner,* 913 F.2d at 1518 (citations and internal quotation marks omitted).

**83.** *See* David R. Hurst, Laurie A. Krepto and Simon E. Fraser, *After the Storm: Post–Confirmation Issues, The Scope of Post–Confirmation Bankruptcy Court Jurisdiction* 2008, American Bankruptcy Institute 595 (citing *Penthouse Media Group v. Guccione (In re General Media, Inc.),* 335 B.R. 66, 73 (Bankr. S.D.N.Y.2005)).

**84.** In *In re CF & I Fabricators of Utah, Inc.,* 150 F.3d 1233, 1237 (10th Cir.1998), the Tenth Circuit held that a bankruptcy court had post-confirmation jurisdiction over an action brought by the U.S. Trustee to collect quarterly fees, reasoning that the action would affect the creditors' recovery under the plan if the Trustee prevailed.

**85.** *In re Resorts Int'l, Inc.,* 372 F.3d 154, 167 (3d Cir.2004) (emphasis added) (no jurisdiction over post-confirmation malpractice claim by the trustee of a litigation trust against the trust's accountants).

**86.** *Id.* Courts in the Second, Fourth, Sixth, and Ninth Circuits have adopted the Third Circuit's close nexus test. *See Kirschner v.*

*Grant Thornton LLP (In re Refco, Inc. Sec. Litig.),* 628 F.Supp.2d 432, 443–45 (S.D.N.Y. 2008); *Valley Historic Ltd. P'ship v. Bank of N.Y.,* 486 F.3d 831, 837 (4th Cir.2007); *In re Thickstun Bros. Equip. Co.,* 344 B.R. 515, 522 (6th Cir. BAP 2006); *In re Pegasus Gold Corp.,* 394 F.3d 1189, 1194 (9th Cir.2005).

**87.** *Boston Reg'l Med. Ctr., Inc. v. Reynolds (In re Boston Reg'l Med. Ctr., Inc.),* 410 F.3d 100, 107 (1st Cir.2005) (liquidating debtor exists solely for executing an order of the bankruptcy court and any litigation involving debtor relates more directly to a proceeding under title 11).

**88.** *See In re Fairfield Communities, Inc.,* 142 F.3d 1093, 1095 (8th Cir.1998) (estate of the debtor, and thus the bankruptcy court's jurisdiction, ceases to exist upon plan confirmation but jurisdiction over aspects of a plan related to its administration and interpretation can be explicitly retained in confirmation order); *Cytomedix, Inc. v. Perfusion Partners & Assocs., Inc.,* 243 F.Supp.2d 786, 789–90 (N.D.Ill.2003) (jurisdiction depends on whether the outcome of the action could impact creditor recovery or the implementation of the confirmed plan).

For example, in *In re Craig's Stores*,[89] the Fifth Circuit confronted this jurisdictional issue in a post-confirmation state-law-based contract dispute between a debtor and its bank, a case not unlike the one on appeal before us. The Fifth Circuit concluded that after plan confirmation, "the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan."[90] The theory underlying contraction of jurisdiction is that

> Once the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval. The [debtor] also is without the protection of the bankruptcy court. It may not come running to the bankruptcy judge every time something unpleasant happens.[91]

▪ In this case, the Plan revested the assets in the Houliks upon confirmation. Further, the Plan has been substantially consummated and administered, and the damages awarded in the action benefit the Houliks and not their creditors. Additionally, this case does not involve noncompliance with or interpretation of the Plan. Santander did not intentionally or knowingly fail to comply with or execute any provisions of the Plan, for example, by refusing to accept payments from the Houliks or crediting payments for current months to arrearages. Moreover, the Plan specifically provided that the creditor retained its collateral rights in the Truck. Accordingly, if the Houliks had in fact missed two monthly payments, then Santander's repossession of the Truck would have been conduct allowed by the Plan.

▪ Regardless of whether we apply the Third Circuit's close nexus test or a narrower standard, we conclude that the bankruptcy court did not have post-confirmation "related to" jurisdiction over this wrongful repossession action. Even though it is brought by the debtors, the action affects neither an integral aspect of the bankruptcy process, nor the interpretation, implementation, consummation, execution, or administration of the confirmed plan. That is, of course, not to say there is no remedy for the Houliks in this situation—only that it is a state court remedy and not a bankruptcy court remedy. When asked at oral argument why he opted to reopen the bankruptcy case and file a motion for stay violation instead of filing an action against Santander in state court, counsel for the Houliks responded that it would be easier to get Santander's attention if filed in bankruptcy court.[92] Per-

---

**89.** *In re Craig's Stores of Tex., Inc.*, 266 F.3d 388 (5th Cir.2001).

**90.** *Id.* at 390.

**91.** *Id.* (quoting *Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir.1991)) (emphasis omitted).

**92.** It is interesting to note that in his first letter to Santander, counsel for the Houliks stated:

> To execute a repossession without having first contacted the parties and advised them of the delinquency violates Kansas Law and *may be* in violation of federal Bankruptcy law.... Needless to say, we view this action very gravely and intend to pursue our

legal remedies for the wonton (sic) action of your agents at your direction.

*Letter dated December 28, 2010, from Jeffrey W. Rockett to Santander Consumer USA, Inc., in* Appellant's App. at 582 (emphasis added).

In his follow up letter forwarding copies of payments on the Truck, counsel did not specifically mention violation of bankruptcy law, only state law:

> As I stated in my letter of December 28, 2010 we intend to pursue all legal remedies afforded to us and I am presently preparing a suit claiming wrongful repossession, damages from that act and violations of the Kansas Uniform Consumer Credit Code.

haps so, but that does not alter the scope of the bankruptcy court's jurisdiction following confirmation, which is reserved for matters that impact the bankruptcy process directly or involve interpretation or execution of the plan of reorganization.

## V.  CONCLUSION

We are not unsympathetic to the Houliks, who despite having sought the protection of bankruptcy and allegedly making all required monthly Plan payments to Santander, were deprived of their Truck for almost three months.  We also understand the bankruptcy court's desire to provide the Houliks with a remedy, as well as deter any future such conduct by Santander.  But, jurisdiction cannot be created where there is none, and accordingly, we must reverse and vacate the bankruptcy court's order awarding costs, actual damages, and punitive damages to the Houliks.  Our decision should in no way be interpreted as exonerating Santander for its conduct in repossessing the Truck on such sketchy information of delinquent payments.  Should the Houliks elect to bring a claim in some other court, they could conceivably achieve a better result.

BROWN, Bankruptcy Judge, concurring.

I concur in the result reached by the majority but write separately to express my concerns with the majority's analysis of post-confirmation jurisdiction.  The majority discusses three possible statutory bases for the bankruptcy court to sanction Santander's post-confirmation repossession of Debtors' Truck: § 362(c); § 524(i); and a combination of §§ 105, 1141 and 1142.  I agree with the majority that neither § 362(c) nor § 524(i) is applicable given the absence of the automatic stay and discharge injunction at the time Santander repossessed the Truck.  I similarly agree that §§ 105, 1141 and 1142 were unavailable because those sections focus on acts and orders necessary to carry out the provisions of a confirmed plan of reorganization.[1]  As the majority correctly emphasizes, Debtors' Plan provided that Santander "shall maintain its collateral rights ..." after confirmation.[2]  Thus, Santander's exercise of its collateral rights post-confirmation did not violate or otherwise prevent consummation of the terms of Debtors' plan.  Debtors' remedy for Santander's wrongful repossession lies with state law, not the Bankruptcy Code.  The bankruptcy court therefore lacked statutory authority to sanction Santander and its order should be reversed.

The majority opinion, however, does not stop with this conclusion. It goes on to conclude that the bankruptcy court lacked jurisdiction to enter its order.  The majority first concludes that the court lacked core jurisdiction because "[Debtors'] claim lacks an anchor to bankruptcy law sufficient to confer core jurisdiction...."[3]  The majority then goes on to do an extensive analysis of postconfirmation "related to" jurisdiction, ultimately deciding that such jurisdiction did not exist because "the [Debtors'] action affects neither an inte-

*Letter dated January 4, 2011, from Jeffrey W. Rockett to Santander Consumer USA, Inc., in* Appellant's App. at 584.

**1.**  *See* 11 U.S.C. § 1142(b) ("The court may direct the debtor and any other necessary party to ... perform any other act ... that is necessary for the consummation of the plan.");  11 U.S.C. § 1141(a) ("the provisions of a confirmed plan bind the debtor ... and any creditor ... whether or not the claim or interest of such creditor ... is impaired under the plan and whether or not such creditor ... has accepted the plan.").

**2.**  *Plan* at 18, *in* Appellant's App. at 811.

**3.**  Majority Opinion at 674.

gral aspect of the bankruptcy process, nor the interpretation, implementation, consummation, execution, or administration of the confirmed plan."[4] The underlying premise of this analysis is that the bankruptcy court's post-confirmation jurisdiction is limited to "related to" jurisdiction. It fails to acknowledge a bankruptcy court's *core* jurisdiction to interpret or enforce plan confirmation orders in the post-confirmation context.

The Tenth Circuit has provided little guidance in determining bankruptcy court post-confirmation jurisdiction, whether core or "related to." As noted by the majority, the Circuit has decided one published case addressing the issue of post-confirmation "related to" jurisdiction but did not articulate a specific test.[5] Another unpublished decision discusses "related to" jurisdiction, but lacks specific direction.[6] As evident from the majority's analysis, courts in other jurisdictions have taken various approaches. Some courts focus almost exclusively on "related to" jurisdiction when looking at post-confirmation claims.[7] But performing a "related to" analysis is unnecessary if core jurisdiction exists.[8] As explained by the Third Circuit,

the "related to" jurisdiction inquiry is not triggered in every post-confirmation matter:

> While courts may choose to rely on "related to" jurisdiction because it is the broadest category of federal bankruptcy jurisdiction when examining their own jurisdiction, it certainly is not incumbent upon them to do so, because, as occurred here, a party may argue and a court may decide that a proceeding falls within one of the narrower categories of jurisdiction, such as "arising in" jurisdiction, in which case "related to" jurisdiction and the corresponding "close nexus" test are not implicated.[9]

The majority limits its discussion of core jurisdiction to whether Debtors' claim involved interpretation of a bankruptcy law, such as the automatic stay.[10] Other courts, however, have recognized that a bankruptcy court retains post-confirmation *core* jurisdiction to interpret and enforce its own prior orders, including the confirmation order.[11] A bankruptcy court also has post-confirmation core jurisdiction to implement or execute the plan.[12] "The law is clear that '[a] bankruptcy court retains post-confirmation jurisdiction to interpret

**4.** *Id.* at 676.

**5.** Majority Opinion at 675 (citing *In re CF & I Fabricators of Utah, Inc.,* 150 F.3d 1233, 1237 (10th Cir.1998)).

**6.** *Peterson v. Fed. Trade Comm'n (In re Peterson),* 6 Fed.Appx. 837, 839 (10th Cir.2001) (concluding that "[t]he district court appropriately applied a strict test for § 1334( ) 'related to' jurisdiction, looking to the proceedings practical effect on implementation of the confirmed reorganization plan, rather than to its conceivable effect on the bankruptcy estate. Any impact on the implementation of [Debtor]'s plan is simply too remote a contingency to support bankruptcy jurisdiction under § 1334(b)") (citations omitted).

**7.** *E.g., In re Thickstun Bros. Equip. Co., Inc.,* 344 B.R. 515, 520 (6th Cir. BAP 2006) (con-

cluding jurisdictional analysis need only determine whether the matter is at least "related to" the bankruptcy).

**8.** *In re Seven Fields Dev. Corp.,* 505 F.3d 237, 260 (3d Cir.2007).

**9.** *Id.*

**10.** Majority Opinion at 674.

**11.** *In re Petrie Retail, Inc.,* 304 F.3d 223, 230 (2d Cir.2002); *In re Nat'l Gypsum Co.,* 118 F.3d 1056, 1064 (5th Cir.1997); *In re Case,* 937 F.2d 1014, 1020 (5th Cir.1991).

**12.** *In re U.S. Brass Corp.,* 301 F.3d 296, 305–06 (5th Cir.2002); *In re Case,* 937 F.2d at 1020.

and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization.... A post-confirmation proceeding involving a bankruptcy court's enforcement of its own order is a core proceeding." [13]

The Supreme Court also has recognized that, post-confirmation, a bankruptcy court retains "jurisdiction to interpret and enforce its own prior orders." [14] The Supreme Court did not describe this jurisdiction as "core," but relied on another Supreme Court decision that recognized a bankruptcy court's "ancillary" jurisdiction to "secure or preserve the fruits and advantages of a judgment or decree rendered" by an earlier order made by the same court.[15] The majority fails to acknowledge this important aspect of post-confirmation jurisdiction, regardless of whether it is deemed to be "core" or "ancillary." When the majority mentions the need to interpret or execute upon a plan, it does so only as part of its "related to" analysis.[16]

In this case, the Debtors' claim did not require interpretation or enforcement of the Plan because Santander was merely exercising its lien rights, which is expressly allowed by the Plan. But imagine if Santander had been an unsecured prepetition creditor that brought an action to collect its pre-petition debt, in violation of the Plan. The majority would apparently send the Debtors back to state court to initiate a breach of contract claim.[17] The state court would have concurrent jurisdiction to enforce the Plan as a contract between Debtors and Santander. But what if twenty unsecured creditors were to ignore the bankruptcy process and file state court collection actions in twenty different state courts? Would the Debtors have no option except to fight off these efforts in twenty different courts? No. The bankruptcy court clearly would have authority to prevent such collection efforts as an enforcement of its order confirming the plan under §§ 1141(a), 1142 and 105(a), whether its jurisdiction is labeled as core or ancillary. Similarly, if Santander refused to accept payments or to credit payments in the manner specified by the Plan, the bankruptcy court would have the ability to sanction such conduct under §§ 1141(a), 1142 and 105(a).

Such is not the case here. Santander is a secured creditor, whose lien rights were specifically retained in the Plan. Its ability to enforce its lien rights in the event of a default in payment was thus preserved in the Plan. Admittedly, a dispute arose over whether the Debtors had missed payments and, in fact, the bankruptcy court found the Debtors to be current on their payments. The Debtors were entitled to be heard on this issue, but not in the bankruptcy court.

---

**13.** *Hawaiian Airlines, Inc. v. Mesa Air Group, Inc.,* 355 B.R. 214, 218–19 (D.Haw.2006) (citations omitted).

**14.** *Travelers Indemnity Co. v. Bailey,* 557 U.S. 137, 151, 129 S.Ct. 2195, 174 L.Ed.2d 99 (2009) (citing *Local Loan Co. v. Hunt,* 292 U.S. 234, 239, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)).

**15.** *Hunt,* 292 U.S. at 239, 54 S.Ct. 695; *see also In re Wilshire Courtyard,* 459 B.R. 416, 433–34 (9th Cir. BAP 2011) (discussing ancillary jurisdiction under the Supreme Court's *Travelers* decision).

**16.** Majority Opinion at 676.

**17.** Majority Opinion at 675.