FILED

U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

February 27, 2015

Blaine F. Bates
Clerk

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

| | |
|---|---|
| IN RE ROBERT ALYN RAEL and LISA LYNN RAEL,<br><br>Debtors. | BAP No. WY-14-035 |
| ROBERT ALYN RAEL and LISA LYNN RAEL,<br><br>Appellants,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Appellee. | Bankr. No. 08-20251<br>Chapter 11<br><br><br>OPINION[*] |
| IN RE ROBERT ALYN RAEL and LISA LYNN RAEL,<br><br>Debtors. | BAP No. WY-14-048 |
| ROBERT ALYN RAEL and LISA LYNN RAEL,<br><br>Appellants,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Appellee. | Bankr. No. 08-20251<br>Chapter 11 |

Appeal from the United States Bankruptcy Court
for the District of Wyoming

---

[*]    This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion.  10th Cir. BAP L.R. 8026-6.

Before KARLIN, SOMERS, and JACOBVITZ, Bankruptcy Judges.

KARLIN, Bankruptcy Judge.

Debtors Robert and Lisa Rael (the "Raels") contend that after their case was closed and they defaulted on their confirmed individual Chapter 11 plan, their main creditor Wells Fargo Bank, N.A. ("Wells Fargo") was required to return to the bankruptcy court to enforce its preserved lien rights rather than proceed in state court. They contend Wells Fargo violated the stay when it failed to do so. Because we agree with the bankruptcy court's decision that there was no violation of the automatic stay, and that the bankruptcy court did not have exclusive jurisdiction to enforce the terms of the Raels' confirmed plan, we affirm the decisions of the bankruptcy court.[1]

I. **Procedural Timeline**

The timeline and procedural posture of the Raels' case, while not unique to individual Chapter 11 proceedings generally, lead to the underlying disputes. The bankruptcy court confirmed the Raels' individual Chapter 11 plan, and the Raels elected to close their case prior to receipt of a discharge. Wells Fargo subsequently filed two state court actions: one to enforce the terms of the confirmed Chapter 11 plan based on the Raels' plan default and one to determine lien priorities. The state court entered judgment against the Raels in the first case (without objection by the Raels as to the state court's jurisdiction or power to hear the matters). Sometime later, the Raels reopened their Chapter 11 case and filed a motion to show cause and/or for contempt against Wells Fargo.

---

[1] The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not significantly aid in the determination of this appeal. *See* Fed. R. Bankr. P. 8019(b)(3). The case is therefore ordered submitted without oral argument.

The Raels argued both that: 1) Wells Fargo violated the automatic stay of 11 U.S.C. § 362(a)[2] because of its enforcement actions against property of the estate, and 2) that Wells Fargo violated the terms of the Raels' confirmed Chapter 11 plan by seeking relief in state court, rather than in the bankruptcy court. The bankruptcy court ruled that there was no stay violation. It cited both § 362(c)(2), which states that "the stay of any other act . . . continues until . . . the time the case is closed,"[3] and *Houlik*,[4] a Tenth Circuit BAP opinion applying § 362(c) to an individual Chapter 11 case and holding that the automatic stay terminated as to estate property upon plan confirmation under § 362(c)(1) and as to all other property upon the closing of the case under § 362(c)(2).[5] The bankruptcy court also rejected the Raels' argument that the bankruptcy court had exclusive jurisdiction to enforce the provisions of their plan and that the state court actions were, therefore, improper. It again relied on *Houlik*, which held that when there is no automatic stay or discharge injunction violation to support jurisdiction, a bankruptcy court does not have jurisdiction to determine a post-confirmation wrongful possession action.[6]

After the bankruptcy court denied their motion to show cause and/or for contempt, the Raels requested reconsideration, this time focusing their argument on § 362(c)(1). The bankruptcy court again denied the motion, this time ruling that it was inappropriate for the Raels to advance new arguments in a motion for reconsideration. The Raels appealed both orders in their first appeal. But they

---

[2]   All future statutory references are to Title 11 of the United States Code, unless otherwise specified.

[3]   11 U.S.C. § 362(c)(2)(A).

[4]   *In re Houlik*, 481 B.R. 661 (10th Cir. BAP 2012).

[5]   *Id.* at 669-70.

[6]   *Id.* at 676.

were not done; advancing a "continuing violation" theory, they then filed yet another motion to show cause and/or for contempt, presenting the same arguments. The bankruptcy court again denied the motion on the same bases, resulting in a second appeal. The Raels' appeals were companioned by this Court and are resolved by this opinion.

## II. Background Facts

The Raels filed an individual Chapter 11 bankruptcy petition in 2008, and their plan was confirmed in January 2010. The plan provided they would not receive a discharge until they completed all payments under their plan. About a year after their plan was confirmed, they filed a final report and motion for final decree, seeking to close their case to avoid paying the United States Trustee's quarterly fee assessments. Over objections by both the United States Trustee and Wells Fargo, the bankruptcy court entered a Final Decree and Order Closing Case in March 2011. Neither the motion requesting case closing nor the resulting order addressed any aspect of the automatic stay or suggested the closing was anything but a full and complete closure of the case.

Several months after the case was closed, Wells Fargo filed a motion to dismiss or convert the bankruptcy case based on the Raels' default. The Raels objected, arguing that because their case was closed, the bankruptcy court did not have jurisdiction to grant relief. The motion remained undecided, and the bankruptcy court later noted it had not ruled on Wells Fargo's motion because the case was closed.

Finding no relief at the bankruptcy court, Wells Fargo filed a complaint in state court in November 2011, alleging the Raels had breached their contract when they defaulted on the terms of the confirmed plan. The Raels answered the state court complaint, failing to raise any jurisdictional defense to that court hearing the matter, and the state court entered judgment for Wells Fargo in September 2012.

-4-

A few months later, in December 2012, Wells Fargo next filed a state court action seeking a determination that Wells Fargo had a superior lien over lien rights of other defendants/creditors in certain property that the Raels acquired before they commenced their Chapter 11 bankruptcy case. Wells Fargo then installed a locked fence around one of the properties in February 2013.

More months passed. On May 28, 2013, the Raels moved to reopen their bankruptcy case to enforce the terms of their confirmed plan and to bring a contempt action for Wells Fargo's alleged violation(s) of the automatic stay. The court reopened the Raels' bankruptcy case in June 2013. Several months later, in September 2013, the parties filed a stipulated motion for relief from automatic stay to allow Wells Fargo to foreclose on the subject properties (i.e., the properties that were the subject of the state court proceedings). The order approving that stipulated motion was entered on October 21, 2013.

Notwithstanding their stipulation to the bankruptcy court granting stay relief, the Raels filed their first motion to show cause and/or for a finding of contempt by the bankruptcy court on October 15, 2013. They alleged that Wells Fargo was in contempt for violating §§ 362(a)(3), (5), and (6) based on the state court actions filed before the stipulated stay relief, and for violating terms of the Raels' confirmed Chapter 11 plan, generally alleging that the property at issue remained property of the estate and subject to the automatic stay. While this motion was pending—but after the stipulated relief order was entered, Wells Fargo proceeded to change the locks at two of the properties, and, in January 2014, foreclosed on them.

Several months later, in April 2014, the bankruptcy court denied the Raels' contempt motion, finding there was no stay violation and that Wells Fargo was entitled to enforce its rights under the confirmed plan in state court. As stated above, the bankruptcy court also denied a subsequent motion for reconsideration and a second motion for an order to show cause and/or for contempt. The appeals

that are the subject of this opinion followed.

## III. Jurisdiction and Standard of Review

This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[7] Neither party elected to have this appeal heard by the United States District Court. The parties have therefore consented to appellate review by this Court. The orders of the bankruptcy court (i.e., denying the Raels' first motion to show cause and/or for contempt, motion for reconsideration, and second motion to show cause and/or for contempt) fully and finally resolved the parties' disputes and are therefore final orders for purposes of appeal.[8] The Raels timely appealed those orders and this Court, therefore, has jurisdiction over the appeals.

The issues raised in these appeals are legal issues, which this Court reviews *de novo*.[9] "*De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision."[10]

---

[7] 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8002 (*now also at* Fed. R. Bankr. P. 8005, effective Dec. 1, 2014); 10th Cir. BAP L.R. 8001-3 (*now codified* at 10th Cir. BAP L.R. 8005-1, effective December 1, 2014).

[8] *See In re Eneco, Inc.*, No. UT-09-013, 2010 WL 744351, at *4 (10th Cir. BAP Mar. 2, 2010) (bankruptcy court order denying motion for contempt is final for purposes of review).

[9] *Jantz v. Karch (In re Karch)*, 499 B.R. 903, 906 (10th Cir. BAP 2013) (interpretation of statutory language is reviewed *de novo*) (citing *Pierce v. Underwood*, 487 U.S. 552, 558 (1988)); *Diviney v. Nationsbank of Tex., N.A. (In re Diviney)*, 225 B.R. 762, 769 (10th Cir. BAP 1998) ("Whether a party's actions . . . violated the automatic stay is a question of law [that] is reviewed *de novo.*") (quoting *Barnett v. Edwards (In re Edwards)*, 214 B.R. 613, 618 (9th Cir. BAP 1997)); *Korngold v. Loyd (In re S. Med. Arts Cos., Inc.)*, 343 B.R. 250, 254 (10th Cir. BAP 2006) (bankruptcy court's subject matter jurisdiction is an issue of law that is reviewed *de novo*) (citing *Salt Lake Tribune Pub. Co., LLC v. AT & T Corp.*, 320 F.3d 1081, 1095 (10th Cir. 2003)).

[10] *AG New Mexico, FCS, ACA v. Borges (In re Borges)*, 510 B.R. 306, 321 (10th Cir. BAP 2014) (citing *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991)).

## IV. Discussion

### A. Application of the Automatic Stay in Individual Chapter 11 Cases Post-confirmation

The filing of a petition in bankruptcy automatically imposes a stay that prohibits most attempts by a debtor's creditors to enforce their claims.[11] The duration of that stay is generally defined in § 362(c). The issue in this appeal is whether the stay in the Raels' case remained in effect when Wells Fargo initiated state court proceedings or otherwise enforced its rights under the Raels' confirmed plan.

The relevant subsections of § 362(c), which are subject to specific exceptions not applicable here, provide:

> (1) the stay of an act *against property of the estate* under subsection (a) of this section continues until *such property* is no longer property of the estate;
>
> (2) the stay of *any other act* under subsection (a) of this section continues until the *earliest of*–
> (A) the time the case is *closed*;
> (B) the time the case is *dismissed*; or
> (C) if the case is a case . . . under chapter 9, *11*, 12, or 13 of this title, the time a *discharge is granted* or denied[.][12]

The Raels contend that Wells Fargo's enforcement actions were taken against real property that constituted property of the estate and, therefore, § 362(c)(1) is the applicable subsection. But the bankruptcy court concluded that the stay terminated as to all of the Raels' property when they elected to close their case in March 2011. All of Wells Fargo's disputed conduct occurred between November 2011 (when it filed the first state court complaint) and February 2013 (when it fenced in and locked one of the disputed properties). Thus, if the stay terminated when the bankruptcy court closed the case in March 2011, there was no stay in place that Wells Fargo's subsequent enforcement efforts could violate.

---

[11]     11 U.S.C. § 362(a).

[12]     11 U.S.C. § 362(c)(1)-(2) (emphasis added).

On appeal, the Raels argue that the automatic stay remains in effect in individual Chapter 11 cases post-confirmation because of the interplay between §§ 362(c)(1), 1141(b), and 1115(a). The Raels, as the party alleging a stay violation, bear the burden to prove Wells Fargo violated the stay.[13]

As noted above, § 362(c)(1) expressly states that the automatic stay "of an act against property of the estate . . . continues until such property is no longer property of the estate."[14] Section 1141(b) then states that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."[15] Because the plan and confirmation order the Raels drafted did not elect to provide otherwise, the simple reading of these two statutes resulted in all property of the estate, at least as it existed on the date of confirmation, vesting in the Raels at confirmation. As a result, the automatic stay protecting that property—which included the property the Raels had pledged to Wells Fargo—terminated upon confirmation of the Raels' plan in January 2010.

The Raels argue that § 1115(a) conflicts with § 1141(b), because § 1115(a) states that in individual Chapter 11 cases, property of the estate includes property "acquire[d] after the commencement of the case . . ." and "earnings from services performed by the debtor after the commencement of the case . . . ," as long as that property was acquired or earned "before the case is closed, dismissed, or converted . . . ."[16] The Raels then analogize these Chapter 11 sections to similar Chapter 13 sections, and discuss the split of authority in Chapter 13 cases over

---

[13] *See Johnson v. Smith (In re Johnson)*, 501 F.3d 1163, 1171-72 (10th Cir. 2007).

[14] 11 U.S.C. § 362(c)(1).

[15] 11 U.S.C. § 1141(b).

[16] 11 U.S.C. § 1115(a)(1)-(2).

whether the property of the estate remains property of estate after confirmation until discharge, and is therefore protected by the automatic stay. In the Chapter 13 context, there is no Tenth Circuit or BAP opinion deciding this issue,[17] and there are no opinions at all on the issue in the Chapter 11 context.

There is no real dispute that the bankruptcy court did not address this argument (analogizing Chapter 11 provisions to Chapter 13 cases and the split in the case law in those cases). And Wells Fargo responds to this argument, and the Raels' appeal, by arguing that the Raels waived this argument on appeal by failing to make the same argument at the bankruptcy court. It is true that the Raels' briefing and advocacy on this issue at the bankruptcy court are not clear. In their first motion for an order to show cause and/or for contempt, the Raels only generally argued that the real property at issue was property of the estate and subject to the automatic stay. In their motion for reconsideration, in response to the bankruptcy court's ruling that § 362(c)(2) and *Houlik* defeated their claims, however, the Raels then pushed the issue that § 362(c)(1), rather than § 362(c)(2), should be considered by the bankruptcy court.

The bankruptcy court, in ruling on the motion for reconsideration, held that it was not appropriate for the Raels to advance the § 362(c)(1) argument, because the Raels could have raised the argument in their prior briefing and did not. It was not until briefing in support of their second motion for show cause and/or contempt that the Raels fully briefed their argument about the interplay between

_____

[17] The Tenth Circuit has recognized the split in the Chapter 13 case law concerning the Chapter 13 vesting provisions and property of the estate, but has not indicated which approach it will follow. *See United States v. Richman (In re Talbot)*, 124 F.3d 1201, 1207 n.5 (10th Cir. 1997) (acknowledging question over the vesting provisions of § 1327(b) and its impact on estate property upon confirmation of a Chapter 13 plan). The Tenth Circuit BAP has done the same. *See In re Vannordstrand*, 356 B.R. 788, No. KS-05-091, 2007 WL 283076, at *2 (10th Cir. BAP Jan. 31, 2007) (noting the "disputed issue" of whether "the 'vesting' of estate property in the debtor [in a Chapter 13 case] acts to terminate § 1306's inclusion of post-petition acquired property in the estate" but determining it need not decide the issue in that case).

§§ 362(c)(1), 1141(b), and 1115(a) and their analogy to the Chapter 13 case law.

Ultimately, it is a close call whether the Raels sufficiently and timely raised the argument at the bankruptcy court that they now press on appeal.[18]  But because the Raels' argument is without merit based on the simple application of the plain language of the Bankruptcy Code to the facts of this case, and based on binding precedent, we elect to dispose of it.

Debtors do not satisfactorily address the Tenth Circuit BAP opinion in *Houlik*,[19] which has facts and issues similar to those at hand.  In *Houlik*, after the individual Chapter 11 debtors' plan was confirmed, the court administratively closed the case prior to debtors' receipt of their discharge.[20]  The debtors' confirmed plan expressly vested all property in the debtors at confirmation.[21]  The debtors reopened their bankruptcy case several months later, alleging a violation of the automatic stay as well as a violation of the discharge injunction and the plan confirmation order.[22]  Regarding the alleged violation of the automatic stay, the *Houlik* panel applied § 362(c) and held the following:

> Pursuant to § 362(c)(1), the stay of an act against property of the estate continues only until such property is no longer property of the estate. As a result, in this case [where the plan itself vested property in the debtors upon confirmation], the automatic stay imposed with respect to the [property] when the [debtors] filed their Chapter 11 petition terminated upon Plan confirmation. Additionally, § 362(c)(2) provides that the stay of any other act against the [debtors] to collect on a prepetition claim continues only until the case is closed, the case is

---

[18]    The review applicable on appeal would change if the Raels had not properly raised the issue at the bankruptcy court. *See Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1227 (10th Cir. 2001) (noting that when an appellant failed to timely raise an issue in the lower court, then the only review available is for plain error) (citing *Giron v. Corrections Corp. of Am.*, 191 F.3d 1281, 1289 (10th Cir.1999)).

[19]    *Houlik*, 481 B.R. at 661.

[20]    *Id.* at 664.

[21]    *Id.*

[22]    *Id.*

dismissed, or a discharge is granted or denied, whichever occurs first. Thus, any stay of actions against the [debtors] terminated when their case was closed . . . . As a result, [the creditor] cannot be sanctioned for repossession of the [property] as a violation of the automatic stay.[23]

The *Houlik* decision did not address the Raels' current argument about the interplay between §§ 362(c)(1), 1141(b), and 1115(a), likely because that court did not believe it needed to. The *Houlik* decision applies the plain language of § 362(c) and concludes that the automatic stay terminated as to property of the estate upon plan confirmation, and terminated as to all other property upon case closing.[24]

The Raels attempt to distinguish *Houlik* by emphasizing that the Chapter 11 plan in *Houlik* expressly vested property of the estate in the debtors upon plan confirmation, while their plan is silent as to vesting. But that is a distinction without a difference, since the plan in *Houlik* did only what the Bankruptcy Code dictates for all cases—i.e., vesting property of the estate with all debtors upon plan confirmation under § 1141(b) (unless the plan provides otherwise). As Wells Fargo argues, the vesting language in *Houlik* was essentially redundant because the Code provides the same result. As a result, the Raels' argument finds no support in the Tenth Circuit.[25] Just as in *Houlik*, the stay of actions against property of the estate terminated upon the Raels' plan confirmation under § 362(c)(1) and § 1141(b). As such, their argument that Wells Fargo violated the

---

[23]    *Id.* at 669-70 (internal citations omitted).

[24]    *Id.*

[25]    The Raels also contend that the bankruptcy court's interpretation of § 362(c)(2), as ending any automatic stay upon closure of the case, renders subsection (c)(1) "surplusage" because closure is irrelevant to (c)(1). However, (c)(1) terminates the stay when estate property no longer belongs to the estate. That happens upon confirmation under § 1141(b), which is prior to termination of the stay under (c)(2). Moreover, § 1141(b) specifically allows debtors to control whether or not estate property vests with them upon confirmation by allowing them to "provide otherwise." As a result, the Raels could have preserved the automatic stay for a time by simply including such a provision in their plan.

automatic stay when it began its state court enforcement actions is misplaced, as the property pledged to Wells Fargo was not estate property at that point. Likewise, the stay that applies to all other acts terminated under § 362(c)(2) when the Raels voluntarily elected to close their case prior to discharge. Thus, there was no automatic stay violation at all.

The addition of § 1115(a) by BAPCPA,[26] and the interplay of that section with §§ 362(c)(1) and 1141(b), although not addressed by *Houlik*, also have no impact here. The Raels analogize these sections to similar provisions in the Chapter 13 context, and rely on cases outside the Tenth Circuit[27] that essentially ignore § 1327(b) (which, like § 1141(b), vests estate property with the debtor upon confirmation unless otherwise provided) on the basis of a perceived "conflict" between re-vesting estate property with the debtor and § 1306(a) (which, like § 1115(a), includes an individual debtor's post-petition assets in the bankruptcy estate). The "conflict" that some courts have found between § 1327(b) and § 1306(a) is that, although estate property "vests" in a debtor upon plan confirmation under § 1327(b), an individual debtor's property and wages acquired post-petition are considered to be "estate property" under § 1306(a) until "the case is closed, dismissed, or converted."[28] Thus, in the event that 1) neither the plan nor the confirmation order provides that estate property shall remain

---

[26] BAPCPA refers to the Bankruptcy Abuse Prevention and Consumer Protection Act, Pub. L. 109-8, 119 Stat. 23, a major statutory revision of the Bankruptcy Code in 2005.

[27] The Raels cite *United States v. Harchar*, 371 B.R. 254 (N.D. Ohio 2007) and *In re Kolenda*, 212 B.R. 851 (W.D. Mich. 1997) as cases finding that, in spite of § 1327(b), estate property remains estate property (and therefore protected by the automatic stay) after confirmation.

[28] *See, e.g.*, *United States v. Harchar*, 371 B.R. 254, 264 (N.D. Ohio 2007) (noting the "contradiction" between § 1306 providing "that earnings and property are property of the estate until the case is closed, dismissed or converted, while plan confirmation occurs before any of these events and "vests all of the property of the estate in the debtor" under [§] 1327"); *In re Kollenda*, 212 B.R. 851, 852–53 (W.D. Mich. 1997) (describing "conflict" between § 1306 and § 1327).

vested in the estate upon confirmation, and 2) the debtor acquires property or wages between confirmation and the closure, dismissal, or conversion of his case, what was previously estate property will be vested with the debtor and property acquired by the debtor after confirmation (that would not have been estate property except for application of § 1306(a) or § 1115(a)) is estate property by virtue of those provisions. These courts then conclude that the property is protected by the automatic stay set forth in § 362(c)(1).[29]

But even if there was controlling Tenth Circuit precedent on this issue, which there is not,[30] § 1115(a) is simply inapplicable to the Raels. Again, § 1115(a) states that in individual Chapter 11 cases, property of the estate includes property "acquire[d] after the commencement of the case . . ." and "earnings from services performed by the debtor after the commencement of the case . . . ," as long as that property was acquired or earned "before the case is closed, dismissed, or converted . . . ."[31] The logical reading of this statute is, then, that it governs only what property *enters* the estate; it has no effect on the termination of the automatic stay under § 362(c) in this case. The property that was the subject of Wells Fargo's actions was property on which Wells Fargo had a prepetition lien. Thus, by definition, this was not property the Raels acquired or earned after they filed their case and before case closure, as required for the express terms of § 1115(a) to apply.

---

[29] *See, e.g.*, *In re Kollenda*, 212 B.R. at 855 (concluding "even if the property in the estate at the time of confirmation is transferred to the debtor under § 1327(b), the estate continues to exist, and property acquired post-confirmation is added to the estate until the case is 'closed, dismissed, or converted') (quoting *In re Fisher*, 203 B.R. 958, 962 (N.D. Ill. 1997)).

[30] Obviously, the issue as it arises in Chapter 13 cases is very far afield from what is squarely presented here. We express or imply no opinion on the split in authority found in the Chapter 13 case law; this is not the proper case to weigh the differing approaches.

[31] 11 U.S.C. § 1115(a)(1)-(2).

As a result, the stay of Wells Fargo's actions against property of the estate had long since terminated—in January 2010 when the plan was confirmed—pursuant to the plain language of § 362(c)(1) and § 1141(b). The Raels could have chosen a different vesting time, as permitted by § 1141(b), but they elected not to do so. Therefore, the confirmation of their plan vested all property of the estate in them (under § 1141(b)) and the automatic stay ceased as to that property at plan confirmation (under § 362(c)(1)). The stay against all other acts terminated, by the express language of § 362(c)(2), when the Raels elected to close their case.[32]

Once again, the Raels made this choice; they voluntarily sought the closing of their case after plan confirmation in order to avoid further Chapter 11 fees. And they used the fact the case was closed as a shield when Wells Fargo attempted to dismiss or convert the Chapter 11 case after the Raels failed to perform under the confirmed plan. They will not now be heard to suggest the closing was something less than is contemplated by the express words of § 362(c)(2)(A).

Based on the timeline outlined herein, the Wells Fargo actions about which

---

[32] Because of this, the Raels' passing argument about the applicability of § 362(a)(5) is misplaced. Section 362(c)(2) terminated any stay under § 362(a). The Raels also argue their Chapter 11 case was closed as a mere administrative matter so they could avoid paying fees to the United States Trustee, and that, therefore, § 362(c)(2) is somehow inapplicable. Regardless of the Raels' motive for closure, however, the Bankruptcy Code does not distinguish amongst motives for case closure. The Raels further argue that the automatic stay was reinstated when they reopened their Chapter 11 case. But, again, the only actions Wells Fargo took after the case was reopened occurred *after* entry of the stay relief order to which the Raels had agreed. The Raels then argue that the reopening of their case somehow retroactively restored the automatic stay. Even if the Raels had made this argument more than superficially, which they did not, we need do no more than mention here that the Code does not provide for such retroactivity. *Cf. In re Singleton*, 358 B.R. 253, 261 (D. S.C. 2006) (analyzing automatic stay in Chapter 13 case, and noting that "[w]hile the Bankruptcy Code [may grant] a bankruptcy court the power to retroactively *grant relief* from a stay . . . ," there is no authority in the Code "that grants the bankruptcy court power to retroactively *impose* a stay. . . .") (internal citations omitted).

the Raels complain occurred between November 2011 and February 2013. The Raels' Chapter 11 plan was confirmed in January 2010, and their Chapter 11 case was closed in March 2011. Under § 362(c)(1), the stay of acts against property of the estate terminated in January 2010 upon confirmation, and "the stay of any other act . . ." terminated in March 2011 upon case closure.[33] The bankruptcy court was correct to conclude there were no automatic stay violations by Wells Fargo and to deny the Raels' motions alleging violations.

**B.     Jurisdiction to Enforce the Terms of the Confirmed Chapter 11 Plan**

The Raels also argue on appeal that the bankruptcy court had exclusive jurisdiction to enforce the provisions of their Chapter 11 plan, and that, therefore, Wells Fargo's state court action for breach of the plan provisions was improper. The bankruptcy court rejected this argument, again based on *Houlik*. The majority in *Houlik* held that when there is no automatic stay or discharge injunction violation to support jurisdiction, and there is no issue involving noncompliance with or interpretation of a confirmed plan, a bankruptcy court does not have jurisdiction to determine a post-confirmation wrongful repossession action.[34]

In *Houlik*, the majority opinion considered whether a bankruptcy court has authority to sanction a creditor for violating a confirmation order when there is no violation of the automatic stay or the discharge injunction.[35] The majority opinion first noted that jurisdiction retention language in a plan "cannot broaden a bankruptcy court's jurisdiction . . . ," and found any attempt to do so with such

---

[33]     11 U.S.C. § 362(c)(2).

[34]     *Houlik*, 481 B.R. at 676.

[35]     *Id.* at 672-73.

language to be irrelevant.[36]  The majority then analyzed 28 U.S.C. § 157(b), and concluded that the debtors' claim in that case was not a core proceeding, and was, in fact, a non-core proceeding that could have been brought in state court for breach of contract or wrongful repossession.[37]  As a non-core proceeding, the bankruptcy court could only have jurisdiction if the action was "sufficiently related to the [debtors'] Chapter 11 bankruptcy case."[38]  Based on the Tenth Circuit's definition of "related to" jurisdiction, and cases from outside the Tenth Circuit applying that definition, the majority opinion in *Houlik* held that, no matter how the "related to" definition is interpreted, the post-confirmation jurisdiction of a case—where assets have re-vested in debtors, the plan is substantially consummated and administered, and the creditor retains its rights in the collateral pursuant to the plan—does not extend to the bankruptcy court to sanction a plan violation.[39]  The majority opinion concluded:

> Even though it is brought by the debtors, the action affects neither an integral aspect of the bankruptcy process, nor the interpretation, implementation, consummation, execution, or administration of the confirmed plan.  That is, of course, not to say there is no remedy for the [debtors] in this situation—only that it is a state court remedy and not a bankruptcy court remedy. . . . [T]he bankruptcy court's jurisdiction following confirmation . . . is reserved for matters that impact the bankruptcy process directly or involve interpretation or execution of the plan of reorganization.[40]

The concurring opinion in *Houlik* agreed that the creditor's exercise of its lien rights retained under the plan did not require either interpretation or enforcement of the plan, which would have been something over which the

---

[36]  *Id.* at 672 n.72 (internal citation omitted). Likewise, the jurisdiction retention language in the Raels' plan is irrelevant in the same way.

[37]  *Id.* at 674.

[38]  *Id.*

[39]  *Id.* at 675-76.

[40]  *Id.* at 676-77.

bankruptcy court retained jurisdiction, but it objected to the majority's failure to acknowledge the importance of such post-confirmation jurisdiction (whether it be core or ancillary) by considering it only under a "related to" analysis.[41] Regarding state court jurisdiction, the concurrence specifically noted that "[t]he state court would have concurrent jurisdiction to enforce the Plan as a contract between the Debtors and [creditor]," but the bankruptcy court would retain authority to prevent certain collection efforts as part of its enforcement of the confirmation order.[42]

The Raels first argue on appeal that *Houlik* is distinguishable because there was, in fact, an automatic stay violation, and that, therefore, the action here would be a core proceeding, not a non-core proceeding. As discussed above, however, the bankruptcy court was correct in finding there was no automatic stay violation, and this holding forecloses the Raels' argument. The Raels then argue that because their plan provided that the bankruptcy court "shall retain jurisdiction" over their plan, that the bankruptcy court must have continuing jurisdiction over the plan—questioning how the bankruptcy court could do anything further in their Chapter 11 case if it has no jurisdiction at that stage. But the *Houlik* decision does not state that bankruptcy courts have *no* post-confirmation jurisdiction. Instead, the majority opinion concluded only that bankruptcy courts do not have "related to" jurisdiction to issue sanctions in non-core post-confirmation actions alleging a violation of the plan for state court enforcement of the plan. Applying the concurring opinion from *Houlik* further reiterates that the bankruptcy court is not left without jurisdiction entirely. Instead, exclusive bankruptcy court jurisdiction did not arise based on those particular facts—facts that are nearly identical to those found here. As a result, the Raels' arguments also fail as to this

---

[41]     *Id.* at 678–79.

[42]     *Id.* at 679.

portion of the bankruptcy court's orders.

## V.      Conclusion

Because we conclude that the bankruptcy court properly found Wells Fargo did not violate the automatic stay, and that the bankruptcy court did not have exclusive jurisdiction to enforce the terms of the Raels' Chapter 11 plan, we affirm the bankruptcy court's orders denying relief to the Raels.