**In re John Henry EDWARDS, Debtor.**

**Donna BARNETT, Appellant,**

v.

**John Henry EDWARDS, Appellee.**

**BAP No. WW–96–2123–RHRy.**

**Bankruptcy No. 94–31760.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 24, 1997.

Decided Nov. 5, 1997.

John S. Mills, Tacoma, WA, for Appellant.

Kathryn A. Ellis, Seattle, WA, for Appellee.

Before: RUSSELL, HAGAN, and RYAN, Bankruptcy Judges.

## OPINION

RUSSELL, Bankruptcy Judge.

The bankruptcy court determined that a creditor violated § 362[1] by recording a lis pendens against the debtor's residence, and awarded sanctions against the creditor and her counsel for violating the stay. The bankruptcy court also denied the creditor's motion under § 305 for abstention or dismissal of the chapter 13 case. The creditor appeals. We AFFIRM.

## I. FACTS

Appellant Donna Barnett and appellee John Henry Edwards were divorced pursuant to a Decree of Dissolution entered in October, 1990, in the Superior Court for the State of Washington (the "state court"). The dissolution decree awarded Edwards most of the community property, including the family home, which had been built with the assistance of a loan from Barnett's great-aunt, Leona LaBarge. The dissolution decree awarded Barnett as her separate property a "judgment in the sum of $22,068.00, representing her share of community property," and a 1986 Oldsmobile, and awarded her a judgment against Edwards for $3,000 in attorneys' fees and costs. The dissolution de-

cree did not specify a due date for payment of the $22,068 judgment and did not contain findings of fact or conclusions of law regarding alimony, maintenance, or support for Barnett.

After the dissolution decree was entered, Edwards failed to make payments on the Oldsmobile, and it was repossessed by the bank. He stopped making payments to LaBarge, and made no payments to Barnett on the $22,068 judgment.[2]

In March, 1993, Barnett served Edwards with an order to show cause regarding contempt ("show cause order") for his failure to comply with the terms of the dissolution decree regarding the $22,068 judgment, the LaBarge debt, the Oldsmobile debt, and the $3,000 in attorneys' fees and costs. The show cause order included requests for a judgment in the amount of $11,000 for the value of the Oldsmobile, sanctions for contempt (including imprisonment), and attorneys' fees and costs incurred in connection with the show cause order. A hearing on the show cause order was set for April 23, 1993.

On April 20, 1993, three days before the scheduled show cause hearing, Edwards filed a chapter 7 bankruptcy case. On July 13, 1993, the bankruptcy court issued an order of discharge which "discharg[ed] all dischargeable debts."

Barnett filed a second show cause order regarding contempt in the state court in February 1994. She requested the same relief sought in the first show cause order, and also requested that the state court modify the dissolution decree to award her the family home, which she stated she would sell to pay the LaBarge debt. She asserted that the LaBarge debt, which by this time totaled approximately $27,000, had been discharged in Edwards' chapter 7 case.

The second show cause order was set for hearing on March 29, 1994, but was briefly

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

2. Under the terms of a Permanent Parenting Plan entered on the same day as the dissolution decree, Edwards was ordered to pay $722.28 per month in child support for the couple's two minor children. He did not default at any time on this obligation.

continued[3] to April 18, 1994, at which time the state court conducted a hearing on the second show cause order. Barnett argued at this hearing that the obligations arising under the dissolution decree, including the LaBarge debt, were debts for alimony, maintenance, or support, and were therefore nondischargeable under § 523(a)(5). At the conclusion of the April 18 hearing, the state court scheduled a hearing for May 4, 1994, to conclusively determine both the contempt and dischargeability issues. Edwards filed this chapter 13 case on May 3, 1994.

On May 5, 1994, the bankruptcy court granted Barnett limited relief from the stay to allow her to proceed with the state court hearing, on the condition that any order or judgment obtained from that court could not be enforced without a further order from the bankruptcy court. The state court then held a full evidentiary hearing on the contempt and dischargeability issues.

In July, 1994, the state court issued findings of fact and conclusions of law, in which it determined that: (1) the LaBarge debt was dischargeable because it was not in the nature of alimony, maintenance or support; (2) the Oldsmobile debt was nondischargeable because it was necessary for the maintenance or support of Barnett and the children; (3) Barnett should be awarded a judgment in the amount of $9,000 plus interest as compensation for the loss of the vehicle; and (4) the $3,000 debt for attorneys' fees was nondischargeable as maintenance or support. The court awarded Barnett attorneys' fees in connection with the second show cause order. In addition, the findings and conclusions included a provision which required Edwards to sign a deed of trust on the family home as additional security for the nondischargeable

debts "promptly (meaning as soon as practicable given [the bankruptcy court's] order restricting enforcement of judgments here." Barnett appealed the portion of the decision concerning the dischargeability of the LaBarge debt to the Court of Appeals of the State of Washington.

Meanwhile, in the chapter 13 case, Edwards filed an amended[4] plan which proposed to refinance the family home prior to December 31, 1995, in order to pay Barnett's $22,068 secured claim in full, to pay Barnett's unsecured claims in monthly installments over the life of the plan, and to continue making child support payments outside the plan.

Barnett objected to confirmation of the amended plan, claiming, among other things, that Edwards would not be able to locate a lender willing to refinance the home. She included in the objection a renewed[5] motion under §. 305 for dismissal of the bankruptcy case or abstention. She contended that the bankruptcy court should dismiss the case because the amended plan could not be confirmed, or abstain because the case solely concerned collection of alimony, maintenance, or support, and the bankruptcy court was improperly interfering with the state court's efforts to collect a nondischargeable debt by way of its contempt powers. The bankruptcy court denied her motion, and overruled her objection to plan confirmation.

The bankruptcy court confirmed Edwards' amended plan on September 26, 1995. Barnett refused to file a proof of claim,[6] on the theory that because all of the debt owed her was nondischargeable, she was entitled to abstain from participation in the bankruptcy case, allow Edwards to pay what he would

---

3. Edwards asked the bankruptcy court to enjoin the hearing because it involved an effort to collect a previously discharged debt. The bankruptcy court allowed the state court to proceed with the show cause hearing regarding contempt. It also asked the state court to exercise its concurrent jurisdiction over the dischargeability issues arising under the dissolution decree, and determine whether or not the debts in question, including the LaBarge debt, were dischargeable.

4. The record on appeal does not contain a copy of his original plan. Barnett contends this was Edwards' fourth proposed plan.

5. This motion appears from the record to have been at least her third motion under § 305 to dismiss or abstain. All of the motions were denied.

6. Edwards therefore filed a proof of claim on her behalf in the amount of $45,000, consisting of a $22,000 lien on the residence and $23,000 in unsecured debt. Barnett received $4,209.76 on account of the unsecured portion of the claim before the plan was completed in December, 1996.

through the plan, and then pursue collection of any unpaid balance after the case closed.

In December, 1995, the bankruptcy court entered an Order on Motion to Determine Claim, which fixed the amount of Barnett's secured claim at $22,068 plus 12% simple interest from October 19, 1990 until paid, determined that all other claims of Barnett were unsecured and "shall not constitute a lien or encumbrance against [the family home]," and ordered Barnett to cooperate in signing all documents necessary to complete the refinancing contemplated by the confirmed plan.

Edwards completed the refinancing on January 3, 1996, and Barnett's secured claim was paid in full in the amount of $38,852.23. The next day, Barnett caused a lis pendens to be recorded against the residence. The lis pendens gave notice of the pending state court marital dissolution action and stated that the object of that action included enforcement of various provisions of the dissolution decree already entered in that case and, in particular, "to enforce a prior contempt judgment directing John Edwards to execute a deed of trust in favor of [Barnett] to secure various unpaid judgments."

When Edwards' counsel discovered the lis pendens, she asked Barnett's counsel to voluntarily remove it because it was recorded in violation of the automatic stay. Barnett's counsel refused to do so. In October, 1996, the Court of Appeals filed its published opinion, which affirmed the state court's determination that the LaBarge debt was dischargeable. Upon receipt of the Court of Appeals' decision, Edwards' counsel again asked Barnett's counsel to voluntarily remove the lis pendens. He again refused, and threatened to cause another contempt hearing to be scheduled.

Edwards filed a motion to strike the lis pendens and requested sanctions for Barnett's violation of the stay. He included in this motion a request to modify the confirmed plan to allow him to sell the residence, pay Barnett in full, and complete the bankruptcy case, in the hopes that her litigation against him would then cease.

Barnett filed an objection to the proposed modification, contending that although a sale of the residence would result in early repayment of nondischargeable debt, it would impair her ability to collect postpetition debt, and would therefore not be worthwhile to her. In her objection, she included a renewed motion to abstain or dismiss the case under § 305, on the same grounds as the earlier motion which the bankruptcy court had denied at the time of plan confirmation. These matters were set for hearing on December 12, 1996.

At the conclusion of the December 12 hearing, the bankruptcy court approved three orders.[7] First, it approved an order which voided the lis pendens because it was recorded in violation of the stay, approved Edwards' request to modify the plan to allow the home to be sold, and ordered Barnett to file a proof of unsecured claim or the claim would otherwise be allowed in the amount of "zero dollars."

Next, the bankruptcy court approved an order which awarded $1,000 in sanctions against Barnett and her counsel. This order stated that Barnett's counsel had filed the lis pendens in violation of the stay, had provided no evidence to indicate that he had acted other than knowingly, willfully and intentionally, that he had been given the opportunity to vacate the lis pendens before the motion to strike the lis pendens was filed, and that he had declined to remove it. Barnett filed a timely notice of appeal of these two orders.

The bankruptcy court approved a third order which determined the amount of Barnett's unsecured claim to be "zero dollars," and ordered her to return the $4,209.76 which Edwards had previously paid her under the confirmed plan on account of her unsecured claim.

Edwards received a discharge in March, 1997, following the completion of his chapter 13 plan, and the chapter 13 trustee filed his final report and account.

## II.   ISSUES

A.   Whether the bankruptcy court erred in determining that the postpetition record-

---

7. All three orders were entered on the bankrupt-    cy docket on December 18, 1996.

ing of the lis pendens violated the stay, and in awarding sanctions.

B. Whether the bankruptcy court erred in denying the motion under § 305 to dismiss the bankruptcy case or abstain.

## III. STANDARD OF REVIEW

■ Whether a party's actions have violated the automatic stay is a question of law which is reviewed *de novo*. *In re Del Mission Ltd.*, 98 F.3d 1147, 1150 (9th Cir.1996); *In re 240 North Brand Partners, Ltd.*, 200 B.R. 653, 656 (9th Cir. BAP 1996). A bankruptcy court's award of sanctions for a violation of the automatic stay is reviewed for abuse of discretion. *In re Roberts,* 175 B.R. 339, 343 (9th Cir. BAP 1994).

■ A bankruptcy court's decision regarding abstention or dismissal under § 305(a) involves a mixed question of fact and law, which the Ninth Circuit Bankruptcy Appellate Panel ('BAP') reviews *In re Eastman,* 188 B.R. 621, 624 (9th Cir. BAP 1995).

## IV. DISCUSSION

A. *Whether The Bankruptcy Court Erred In Determining That The Postpetition Recording Of The Lis Pendens Violated The Automatic Stay. And In Awarding Sanctions*

Barnett presents two arguments on this issue, which can be summarized as follows:

(1) Although the scope of § 362 is broad, no existing case law holds that the mere recordation of a lis pendens, without more, violates the automatic stay. A lis pendens does not give rise to lien rights or constitute a deprivation of property, but instead merely serves as a public notice to prospective purchasers of real property of the existence of pending legal actions which could affect such property. Acts which do not create or perfect lien rights but merely preserve the status quo do not violate the stay. Recordation of a lis pendens, such as the one she recorded, is an act which merely preserves the status quo, and consequently does not violate the stay.

(2) The bankruptcy court order which granted Barnett limited relief from the stay

to proceed with the state court contempt hearing allowed her to record the lis pendens.

1. *The postpetition recording of the lis pendens violated the stay*

■ Section 362(a) prohibits the following types of actions against a debtor postpetition:

(1) the commencement or continuation ... of a judicial ... or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

. . . .

11 U.S.C. § 362(a).

■ The protection of the automatic stay is extensive, and courts have construed its broad scope to prohibit the postpetition filing or recording of a notice of lis pendens. *See Matter of Elrod,* 91 B.R. 187, 189 (Bankr. M.D.Ga.1988) (filing of a notice of lis pendens by the debtor's wife in connection with the parties' divorce after confirmation of the debtor's chapter 13 plan violated the stay and was therefore void); *In re Randy Homes Corp.,* 84 B.R. 799, 801 (Bankr.M.D.Fla.1988) (recording of an amended notice of lis pendens postpetition by a creditor with knowl-

edge of the debtor's pending bankruptcy case violated the stay).

The lis pendens in this case stated, in relevant part:

Notice is hereby given that there is pending in the Superior Court of Pierce County under cause No. 88-3-04690-4 an action which could affect the following described real property:

[property description omitted]

*The object of the action is to, among other things, enforce various provisions of the divorce decree already entered under that cause number by contempt proceedings. And, in particular, to enforce a prior contempt judgment directing [Edwards] to execute a deed of trust in favor of [Barnett] to secure various unpaid judgments.*

(Emphasis added.)

Edwards' "various unpaid judgments" arose from the marital dissolution proceeding and related state court contempt proceeding, both of which were commenced prior to the filing of this chapter 13 case. Barnett had made numerous efforts to collect the monies outside of the bankruptcy forum, and the record reflects her high degree of frustration over what she perceived as the bankruptcy court's improper interference with her efforts to collect on the prepetition debt in the state court proceeding.

Prior to recording the lis pendens, Barnett had stated that she would "simply abstain from participation [in the bankruptcy case], allow the debtor to pay what he will through the bankruptcy, and then pursue collection of any unpaid balance after the bankruptcy case is closed." On appeal, Barnett emphasizes that the provision in the trial court's findings of fact and conclusions of law which required Edwards to sign a deed of trust to secure the nondischargeable debts "as soon as practicable" meant that she would have to wait for the chapter 13 case to close before she could record the deed of trust, and that "[t]here is no reason to do that, or to create the possibility that [Edwards] might sell just after closing his chapter 13, but before [Barnett]

obtains the deed of trust securing all nondischargeable debt."

In other words, Barnett recorded the lis pendens in order to protect her additional claims after the bankruptcy case closed, because she was concerned that Edwards would sell the home before she could obtain the deed of trust securing the additional debt. The bankruptcy court correctly concluded that the recording of the lis pendens violated the stay. It was part of Barnett's continued efforts to recover from Edwards on the remaining portion of her claim.

*2. The bankruptcy court's order granting limited relief from the stay did not allow Barnett to record the lis pendens*

■ The order granting limited relief from the stay stated, in pertinent part:

1. [Barnett] may proceed with the hearing scheduled in Superior Court, in accordance with the order on motion for reconsideration ... entered 28 April 1994 (copy attached) in No. 83-31507;

2. Although she may ask for entry of an order or judgement in that court, she may not enforce the same without further relief from this court.

Barnett argues that this order granted her "relief to proceed" as long as she did not collect anything or enforce any order against Edwards, and that recording the lis pendens was simply part of the court's permission for " 'proceeding' with the state court action," i.e., the state court action in its entirety. However, the order clearly allowed Barnett to proceed solely with the May 4, 1994 state court hearing which had been stayed by the filing of Edwards' chapter 13 case. The order did not give Barnett permission to take further actions such as filing a lis pendens.[8] This argument is without merit.

*3. The award of sanctions*

■ Section 362 provides that "[a]n individual injured by any willful violation of a

---

**8.** Barnett's argument is also contradicted by the state court's findings of fact and conclusions of law, which required Edwards to promptly sign a deed of trust on the family home, and defined "promptly" to mean "as soon as practicable given [the bankruptcy court's] order restricting enforcement of judgments here."

stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). A violation of the stay is willful if the creditor knew of the automatic stay and intentionally performed the actions that violated the stay, and neither a good faith belief that the creditor had a right to the property nor good faith reliance on the advice of counsel is relevant. *In re Goodman,* 991 F.2d 613, 618 (9th Cir.1993) (citing *In re Taylor,* 884 F.2d 478, 482–83 (9th Cir.1989)).

The bankruptcy court found that Barnett's counsel had recorded the lis pendens in violation of the stay, had provided no evidence to indicate he acted other than knowingly, willfully and intentionally, had been given the opportunity to voluntarily vacate the lis pendens without the need for court intervention, and had refused to do so. This is precisely the type of conduct proscribed by § 362(h). The bankruptcy court's award of sanctions against Barnett and her counsel was appropriate.

### B. *Whether The Bankruptcy Court Erred In Denying The Motion Under § 305 To Dismiss The Bankruptcy Case Or Abstain*

■ Barnett's contentions on appeal are identical to those in her motions in the proceedings below: under § 305, the bankruptcy court should have dismissed the bankruptcy case or abstained because she was Edwards' only creditor, the bankruptcy case was solely about how and when Edwards would pay a nondischargeable debt to her, and no issues existed regarding the bankruptcy case which could not have been fairly addressed in the state court action. She characterizes the bankruptcy case as "nothing more than a state court contempt proceeding masquerading as a bankruptcy."

■ Section 305 provides, in pertinent part, that the bankruptcy court may, after notice and a hearing, dismiss a bankruptcy case or suspend all proceedings in a bankruptcy at any time if the interests of creditors and the debtor would be better served by such dismissal or suspension. § 305(a)(1). Abstention under § 305 in a properly filed bankruptcy case is an extraordinary remedy, and dismissal is appropriate under § 305 only in those instances where the court finds that both creditors and the debtor will be better served by abstention or dismissal. *In re Eastman,* 188 B.R. 621, 624 (9th Cir. BAP 1995).

The bankruptcy court's decision in this case to allow the chapter 13 case to proceed followed the dictates of *Eastman,* in that it served the interests of *both* Edwards and Barnett. Edwards filed the bankruptcy case for the proper purpose of paying his debts and facilitating a refinance of his home in order to pay those debts. The bankruptcy case afforded him the opportunity to pay Barnett's secured claim in full [9] in an orderly fashion under the terms of his confirmed plan. He successfully completed his plan and received a discharge. In turn, Barnett received payment of her claims, which was the very relief she had sought throughout the course of the state court action. The bankruptcy court properly denied Barnett's motion to abstain or dismiss Edwards' bankruptcy case.

## V. CONCLUSION

The bankruptcy court correctly determined that the creditor violated the automatic stay by her postpetition recording of a lis pendens against title to the debtor's residence. Her conduct was not justified under the terms of a bankruptcy court order granting limited relief from the stay to proceed with a pending state court hearing. The violation of the stay was willful and warrant-

---

9. The fact that the bankruptcy court reduced the unsecured portion of Barnett's claim to "zero dollars" would not support any argument that the bankruptcy case failed to serve Barnett's interests. Edwards filed a proof of claim on Barnett's behalf in the amount of $45,000, of which $23,000 was listed as unsecured debt, and made payments of $4,209.96 on account of the unsecured claim before the plan was completed. *See supra* at p. 616, footnote 6. Presumably, were it not for Barnett's refusal to file a claim and the court's consequent reduction of her unsecured claim to $0, Edwards would have paid the unsecured portion of Barnett's claim in full as well.

ed the bankruptcy court's award of sanctions against her and her counsel.

The bankruptcy court properly denied the creditor's motion under § 305(a) to abstain or dismiss the bankruptcy case. Continuation of the chapter 13 case served the interests of both the debtor and the creditor, and the bankruptcy court's denial of the motion was appropriate under relevant Ninth Circuit case authority. Accordingly, we AFFIRM.