**FILED**
**U.S. Bankruptcy Appellate Panel**
**of the Tenth Circuit**

**June 26, 2017**

**Blaine F. Bates**
**Clerk**

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

---

| | |
|---|---|
| IN RE DANIEL PEYRANO, | BAP No.     EO-16-032 |
| Debtor. | |
| | |
| DANIEL PEYRANO, | Bankr. No.   14-80402 |
| Plaintiff – Appellee, | Adv. No.    15-08011 |
| | Chapter   7 |
| v. | OPINION* |
| JOE SOTELO, | |
| Defendant – Appellant. | |

Appeal from the United States Bankruptcy Court
for the Eastern District of Oklahoma

Submitted on the briefs.**

Before **NUGENT**, **ROMERO**, and **SOMERS**, Bankruptcy Judges.

**SOMERS**, Bankruptcy Judge.

---

\*      This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion.  10th Cir. BAP L.R. 8026-6.

\*\*      After examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal, and therefore grants the parties' request for a decision on the briefs without oral argument. See Fed. R. Bankr. P. 8019(b). The case is therefore submitted without oral argument.

Creditor Joe Sotelo appeals the bankruptcy court's *Memorandum Opinion*,[1] (the "Order") and *Order Regarding Attorney Fees and Costs*[2] (the "Attorney Fees Order"), awarding the Debtor actual damages, and attorney fees and costs as sanctions against Sotelo for violating the Debtor's discharge injunction.[3]

## I. FACTUAL AND PROCEDURAL HISTORY[4]

On March 18, 2013, Sotelo, represented by attorney Richard Badillo, initiated a lawsuit against Daniel Peyrano (the "Debtor") and others in Rogers County District Court (the "State Court"), Case No. CJ 2013-175 (the "State Court Action") for damages in connection with their failed restaurant venture. Sotelo obtained a summons directed to the Debtor, but he was unable to serve the Debtor within the one hundred and eighty days following the filing of the lawsuit. As a result, on October 1, 2013, the State Court quashed the first attempt to obtain service of process on the Debtor.

The Debtor retained attorney Ron Brown to represent him in filing bankruptcy. On April 24, 2014, the Debtor filed for Chapter 7 relief (the "Bankruptcy"). The Debtor listed Sotelo as an unsecured creditor on his schedules. Sotelo appears in Schedule F as follows:

Joe Sotelo
c/o Richard Badillo
240 W. 15th St.

---

[1]    *Memorandum Opinion*, *in* Appellant's App. at 64 (published as *Peyrano v. Sotelo (In re Peyrano)*, 558 B.R. 451 (Bankr. E.D. Okla. 2016)).

[2]    *Order Regarding Attorney Fees and Costs*, *in* Appellant's App. at 122 (available on Westlaw as *Peyrano v. Sotelo (In re Peyrano)*, No. 15-8011-TRC, 2016 WL 6081031 (Bankr. E.D. Okla. Oct. 17, 2016)).

[3]    All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated. All future references to "Rule" or "Rules" are to the Federal Rules of Bankruptcy Procedure.

[4]    This factual background is substantially drawn from the Order.

Tulsa, OK 74119[5]

As is the practice in all bankruptcy cases, the Bankruptcy Noticing Center ("BNC") mailed notice of the Bankruptcy to the creditors listed on the Debtor's schedules. In that regard, the BNC sent notice of the Bankruptcy to Sotelo in care of Badillo to Badillo's mailing address. On August 7, 2014, the bankruptcy court granted the Debtor a discharge. The BNC also sent Sotelo notice of the discharge to Badillo's address. Sotelo took no action in the Bankruptcy, either personally or through counsel.

While the Bankruptcy was pending, Badillo was injured in an accident and suffered "some type of brain injury."[6] He requested the State Court approve a replacement attorney. On June 4, 2014, the State Court granted his request and substituted Jennifer Heflin as counsel for Sotelo in the State Court Action. On August 15, 2014, Heflin filed an entry of appearance in the State Court Action. Neither Heflin nor Badillo notified the bankruptcy court Heflin had replaced Badillo as Sotelo's attorney.

Also on August 15, 2014, Heflin caused several summonses to be issued, intending to serve certain defendants in the State Court Action, including the Debtor. Shortly thereafter, the Debtor's wife saw the summons on the State Court docket sheet. The Debtor contacted Brown regarding the issuance of the new summons. Brown then contacted Heflin by phone, advising her of the Bankruptcy and discharge. Heflin informed Brown "she did not believe" the discharge injunction applied to Sotelo because the notice was sent to Badillo and not Sotelo individually.[7] The August 15, 2014 summons was not served on the Debtor.

Approximately seven months later, in March 2015, Sotelo instructed Heflin

---

[5]     Appellant's App. at 323.

[6]     Order at 4, *in* Appellant's App. at 67.

[7]     *Id.*, *in* Appellant's App. at 67.

to continue with the State Court Action, and Heflin subsequently caused a third summons to be issued to the Debtor. On April 4, 2015, the Debtor was served with the third summons (the "Summons"). Brown again spoke with Heflin by phone, advising her of the discharge injunction and requesting she dismiss the Debtor from the State Court Action. Heflin, however, refused to dismiss the Debtor, stating Sotelo "was adamant about continuing the litigation[.]"[8] A few days later, Brown filed a *Suggestion of Bankruptcy* (the "Bankruptcy Notice") in the State Court Action. Brown attempted to send the Bankruptcy Notice to Heflin by mail, but she did not receive it because Brown used an erroneous address. Around this time, Heflin notified Sotelo's wife of the Bankruptcy and ceased representing Sotelo. Heflin did not, however, dismiss the Debtor from the State Court Action or move to withdraw as counsel for Sotelo in the State Court Action. On May 29, 2015, the State Court entered an order substituting James Linger for Heflin as counsel for Sotelo.

On June 19, 2015, the Debtor filed the motion to reopen the bankruptcy case. The motion's stated purpose was to file an adversary proceeding against Sotelo for violation of the discharge injunction. The case was reopened on July 7, 2015. Sotelo was mailed a copy of the motion and the order. On July 16, 2015, the Debtor filed his *Complaint for Violation of Permanent Injunction* (the "Complaint"), requesting an award of damages against Sotelo based on a violation of the discharge injunction. On September 10, 2015, Sotelo, by his attorney Linger, filed a dismissal without prejudice of the State Court Action, and a week later filed his *Defendant's Answer.* As affirmative defenses he alleged no further action was taken against the Debtor following the filing of the Bankruptcy Notice and the Summons served on the Debtor was invalid and had no legal effect.

The Debtor subsequently filed an amended complaint, adding Heflin as a

---

[8]     *Id., in* Appellant's App. at 68.

defendant. Sotelo filed his *Answer to Amended Complaint of Plaintiff for Violation of Permanent Injunction* (the "Answer"),[9] setting forth the same defenses as in his initial response.

On August 17, 2016, the bankruptcy court conducted a one-day trial. At the outset of trial, upon the Debtor's oral motion, the bankruptcy court dismissed Heflin without prejudice from the adversary proceeding because she had filed for bankruptcy relief the day before. The Debtor, Sotelo, Heflin, and Brown testified.[10] Following the trial, the bankruptcy court entered its Order, concluding Sotelo violated the discharge injunction and awarding damages, including attorney fees, to the Debtor.[11] The Debtor subsequently filed his *Application for Allowance of Attorneys' Fees*.[12] Sotelo objected to the requested fees, because, among other reasons, (i) the award was inequitable; (ii) the requested fees were for duplicative services; and (iii) he should not pay for time billed primarily related to Heflin.[13] On October 17, 2016, the bankruptcy court entered its Attorney Fees Order,[14] awarding attorney fees as a civil contempt sanction to compensate the Debtor for the losses sustained due to Sotelo's discharge injunction violation. The total award of attorney fees and expenses was $22,136.52, in addition to the already awarded $3,200 for actual damages awarded to the Debtor for lost wages. This appeal followed.

---

[9]     Appellant's App. at 37.

[10]     At trial, the Debtor was represented by Greggory Colpitts, as well as Brown.

[11]     Order at 1, *in* Appellant's App. at 64. The bankruptcy court awarded damages of $3,200.00 based on lost wages and attorney fees and costs in an amount to be determined. *Id.* at 13, *in* Appellant's App. at 77.

[12]     Appellant's App. at 86.

[13]     *Defendant Joe Sotelo's Response and Memorandum Brief to Movants' Application for Allowance of Attorneys' Fees in* Appellant's App. at 110.

[14]     Appellant's App. at 122.

## II. APPELLATE JURISDICTION

The Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[15] The Debtor appeals the Order, the Attorney Fees Order, and corresponding judgment, which finally disposed of this adversary proceeding on the merits. This Court has jurisdiction over this appeal. None of the parties elected to have this appeal heard by the United States District Court for the Eastern District of Oklahoma following the Sotelo's appeal. Therefore, the parties have consented to appellate review by this Court.

## III. STANDARD OF REVIEW

Sotelo argues the bankruptcy court erred in finding he received notice through counsel of the Bankruptcy. Whether Sotelo received imputed notice through counsel is a question of law reviewed *de novo*.[16] Whether Sotelo received actual notice is a factual finding reviewed for clear error.[17] A factual finding is "clearly erroneous" when "it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction a mistake has been made."[18]

Sotelo next challenges the bankruptcy court's determination Sotelo violated the discharge injunction. Whether Sotelo violated the discharge injunction is a

---

[15]    28 U.S.C. § 158(a)(1), (b)(1), & (c)(1); Rule 8005; 10th Cir. BAP L.R. 8005-1.

[16]    *In re Land*, 215 B.R. 398, 403 (8th Cir. BAP 1997).

[17]    *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1292 (10th Cir. 1997) (citing *Clark v. Sec. Pac. Bus. Credit, Inc. (In re Wes Dor, Inc.)*, 996 F.2d 237, 241 (10th Cir. 1993)).

[18]    *LeMaire ex rel. LeMaire v. United States*, 826 F.2d 949, 953 (10th Cir. 1987) (citing *Cowles v. Dow Keith Oil & Gas, Inc.*, 752 F.2d 508, 510-11 (10th Cir. 1985)).

question of law reviewed *de novo*.[19]

Finally, Sotelo contends the bankruptcy court erred in its award of damages and the attorney fees. Sotelo argues the bankruptcy court's award of actual damages is a factual finding reviewed for clear error.[20] The BAP, however, has previously reviewed damages awarded as sanctions for violation of the automatic stay under an abuse of discretion standard.[21] Similarly, an award of attorney fees is reviewed for an abuse of discretion.[22] In both instances, the bankruptcy court's decision should not be disturbed in the absence of "a definite and firm conviction that the bankruptcy court made a clear error of judgment or exceeded the bounds of permissible choice under the circumstances."[23]

## IV. ISSUES

Sotelo's opening brief identifies six issues on appeal. Issues two and three challenge the bankruptcy court's finding that the discharge injunction was violated and we address these as a single issue. Likewise, Sotelo's issues four, five, and six challenge the bankruptcy court's award of damages and fees and we address these also as a single issue. Accordingly, this Court addresses the following three issues:

(1)     Did the bankruptcy court err in finding Sotelo received imputed notice of the Bankruptcy?

---

[19]     *Santander Consumer, USA Inc. v. Houlik (In re Houlik)*, 481 B.R. 661, 668 (10th Cir. BAP 2012) (citing *Culley v. Castleberry (In re Culley)*, No. NM-05-105, 2006 WL 2091199, at *2 (10th Cir. BAP July 24, 2006)).

[20]     Appellant's Br. 2, 23.

[21]     *Diviney v. Nationsbank of Tex., N.A. (In re Diviney)*, 225 B.R. 762, 769 (10th Cir. BAP 1998) (citing *In re Edwards*, 214 B.R. 613, 618 (9th Cir. BAP 1997)).

[22]     *Anchondo v. Anderson, Crenshaw & Assoc.*, 616 F.3d 1098, 1101 (10th Cir. 2010).

[23]     *United States v. Berger (In re Tanaka Bros. Farms, Inc.)*, 36 F.3d 996, 998 (10th Cir. 1994) (citing *United States v. Talamante*, 981 F.2d 1153, 1155 (10th Cir. 1992)).

(2)     Did the bankruptcy court err in concluding Sotelo violated the discharge injunction?

(3)     Did the bankruptcy court abuse its discretion in awarding the Debtor actual damages and attorney fees?

## V. DISCUSSION

### (1)     Did the bankruptcy court err in finding Sotelo received imputed notice of the Bankruptcy?

The bankruptcy court concluded Heflin was given notice of the Bankruptcy in August of 2014 and such notice was imputed to Sotelo. Sotelo argues that the bankruptcy court erred in finding "he had received notice through his attorneys of Mr. Peyrano's chapter 7 bankruptcy because of the unusual and particular circumstances of the attempted notice to him of Peyrano's bankruptcy filing."[24] Sotelo argues due process was not provided because all written notice from the bankruptcy court was sent to Badillo, not to Sotelo's subsequent attorneys, Heflin and Linger.[25] In support of this proposition, Sotelo relies solely on *In re Schick*.[26]

Whether Sotelo received imputed notice through counsel is a question of law reviewed *de novo*. *In re Schick* states the following regarding imputed notice to a creditor by notice to the creditor's attorney:

> An attorney may be an agent of his or her client, and notice to an agent-attorney can be imputed to the principal-client. . . . While an attorney need not have been retained to represent a creditor in a bankruptcy case or be a bankruptcy attorney, it is important that there be some nexus between the creditor's retention of the attorney and the creditor's issues with the debtor. It is generally held that an attorney who represents the creditor in matters against a debtor prepetition, such as in obtaining or collecting a judgment that will be affected by discharge, will be an agent of the creditor in the context of a

---

[24]     Appellant's Br. 15.

[25]     Appellant's Reply Br. 5-6.

[26]     *In re Schick*, 290 B.R. 792 (10th Cir. BAP 2003), *aff'd*, 97 F.App'x. 294 (10th Cir. 2004).

debtor's bankruptcy case.[27]

Sotelo challenges the application of the doctrine of imputed notice based on the facts of this case. We do not find his challenge persuasive. While the record is scant as to Badillo's head injury and the imputation of notice from Badillo to Sotelo, as discussed below, the record does support the bankruptcy court's findings of imputed notice through Heflin and actual notice. Accordingly, we determine it is unnecessary for this Court to consider imputed notice from Badillo to Sotelo.

There is no question the two phone conferences that Heflin had with Brown were sufficient to impute notice to Sotelo. During those conversations Heflin was informed of the Bankruptcy and the Debtor's discharge. Heflin was Sotelo's attorney in the State Court Action at the time of the conversations. Moreover, *Schick* does not require that creditor's counsel be given written notice. Accordingly, we hold the bankruptcy court did not err in finding Sotello received notice through counsel.

Further, even if notice could not be imputed, the Order cannot be reversed on due process grounds because the bankruptcy court correctly found that Sotelo also received actual notice of the Bankruptcy before the Summons was served. The court stated

> The Court believes that the evidence clearly established that Sotelo knew of the bankruptcy and discharged debt prior to the issuance and service of the summons on Peyrano in April of 2015. It is likely that Sotelo actually knew in August of 2014 that Peyrano had filed bankruptcy and received a discharge because he paid for Heflin to have summons issued that month.[28]

Sotelo does not challenge the bankruptcy court's finding that he received actual notice of the Bankruptcy before the Summons was served. Rather, he

---

[27]    *Id.,* at 802-03 (citations omitted).

[28]    Order at 9, *in* Appellant's App. at 72.

concedes that "at some point he was aware [of the Bankruptcy]."[29] The record reveals Sotelo was evasive at trial and testified he could "not remember if [he] heard it from [Badillo]" or from Heflin.[30] He further testified he "didn't ask either one of them specifically when [the Debtor filed the Bankruptcy]" before service of the Summons and "left it up to [Heflin] to decide whether or not the bankruptcy applied."[31] The bankruptcy court reasonably inferred actual notice of the Bankruptcy prior to the service of the Summons.

**(2)    Did the bankruptcy court err in concluding Sotelo violated the discharge injunction?**

Appellant Sotelo offers two bases for challenging the bankruptcy court's conclusion that he violated the discharge injunction: (i) the filing of a suggestion of bankruptcy in the State Court Action was required to effectuate the discharge injunction, and such a notice was not filed until after the Summons was served; and (ii) the Summons was invalid.[32]

*Suggestion of Bankruptcy*

Sotelo argues the bankruptcy court erred in concluding he violated the discharge injunction because the Debtor was allegedly negligent in failing to file the Bankruptcy Notice until after service of the Summons.[33] Sotelo contends, had such document been filed, he would not have violated the discharge injunction and

---

[29]    Appellant's Br. 17; *Trial Tr.* at 76-77, *in* Appellant's App. at 215-16; *Sotelo Depos. Tr.* at 15-16, 18, 28, *in* Appellant's App. at 471-72, 474, 484.

[30]    *Sotelo Depos. Tr.* at 18, *in* Appellant's App. at 474. He also testified he "had heard about [the Bankruptcy] but [he] had not knew when [sic]" and "[he] didn't know which [of] the two was the one that told [him]." *Id.* at 28, *in* Appellant's App. at 484.

[31]    *Id.* at 22, *in* Appellant's App. at 478.

[32]    Appellant's Br. 17-21.

[33]    Appellant's Br. 18.

-10-

the "adversary case would have been unnecessary."[34] In response, the Debtor argues no legal duty exists to file a suggestion of bankruptcy before seeking relief for violation of the discharge injunction.[35] The bankruptcy court found "§ 524(a) operates *automatically* upon the entry of an order of discharge."[36]

Whether a notice of bankruptcy must be filed in pending state court litigation against a debtor to effectuate the discharge injunction is a question of law, subject to *de novo* review. Appellant's argument that such a notice must be filed is not persuasive. The Code does not require the filing of a suggestion of bankruptcy to effectuate the discharge injunction. The "discharge injunction arises by operation of law upon entry of the discharge."[37] Moreover, Sotelo presents no legal authority to support his argument. Accordingly, we hold the bankruptcy court did not err in concluding the discharge injunction was effective prior to the filing of the Bankruptcy Notice.

*Service of Invalid Summons*

Sotelo also argues the Summons was invalid and had no legal effect under Okla. Stat. Tit. 12, § 2004,[38] since the service was made without permission of the

---

[34] Appellant's Br. 19. Appellant also argues that the failure to communicate to the Debtor that there would be no further collection efforts was somehow explained because notice was never sent to Heflin or Linger. Appellant's Reply Br. 9. This argument ignores the actual notice received by Heflin and the reasonable assumption Heflin would have complied with her professional duties in conveying this information to Sotelo and to Linger.

[35] Appellee's Br. 17-18.

[36] Order at 8, *in* Appellant's App. at 71 (*emphasis added*).

[37] *Hambrick v. Perceptual Dev. Corp. (In re Hambrick)*, 481 B.R. 105, 113 (Bankr. E.D. Okla. 2012).

[38] Okla. Stat. Tit. 12, § 2004 provides "[i]f service of process is not made upon a defendant within one hundred eighty (180) days after the filing of the petition and the plaintiff cannot show good cause why such service was not made within that period, the action shall be deemed dismissed as to that defendant without prejudice. The action shall not be dismissed if a summons was served on the defendant within one hundred eighty (180) days after the filing of the petition

(continued...)

trial court more than one hundred and eighty days after the quashing of the original service on the Debtor on October 10, 2013.[39] Although not explicitly stated, Sotelo implies, because the Summons was invalid, serving the Summons on the Debtor did not violate the discharge injunction.[40] In response, the Debtor first argues Oklahoma law did not automatically invalidate the Summons.[41] Next, the Debtor contends, even if the Summons had no legal effect under Oklahoma law, service of the Summons was nonetheless an attempt to collect a debt in violation of the discharge injunction.[42] The bankruptcy court found, regardless of the legal validity of the Summons, Sotelo's intent in serving the Summons was to "cause and coerce [the Debtor] to pay Sotelo for the restaurant debts that had been discharged."[43]

Sotelo's argument that the finding of contempt should be reversed because the service of the Summons was invalid fails. As found by the bankruptcy court, "[r]egardless of the legal validity of the summons, Sotelo's intent in having the summons issued and served on Peyrano was to cause and coerce him to pay Sotelo for the restaurant debts that had been discharged."[44] Section 524(a) specifically

---

[38]     (...continued)
and a court later holds that the summons or its service was invalid. After a court quashes a summons or its service, a new summons may be served on the defendant within a time specified by the judge. If the new summons is not served within the specified time, the action shall be deemed to have been dismissed without prejudice as to that defendant. This subsection shall not apply with respect to a defendant who has been outside of this state for one hundred eighty (180) days following the filing of the petition."

[39]     Appellant's Br. 19-20.

[40]     *Id.*

[41]     Appellee's Br. 18.

[42]     *Id*.

[43]     Order at 12, *in* Appellant's App. at 75.

[44]     *Id.*, *in* Appellant's App. at 75.

prohibits acts to collect discharged debts.[45] The record indicates all parties and counsel were advancing and reacting as if the Summons was continuing the lawsuit against the Debtor. In particular, both Sotelo and Heflin admitted they were unaware of any deficiency in the Summons and served the Summons intending to collect the discharged debt.[46] Accordingly, the bankruptcy court did not err in concluding service of the Summons was a violation of the discharge injunction.

**(3)**      **Did the bankruptcy court abuse its discretion in awarding sanctions for the violation of the discharge injunction?**

Section 524(a) operates as an injunction against the commencement or continuation of an action to collect any discharged debt.[47] Although § 524 does not expressly create a cause of action for damages, the Tenth Circuit has held that, under § 105(a), "bankruptcy courts have the equitable power to enforce and remedy violations of substantive provisions of the [Code], including the discharge injunction in § 524(a)(2)."[48] Bankruptcy courts generally award actual damages, attorney fees, and punitive damages as sanctions for willful violations of the discharge injunction.[49]

> *Sotelo's assertion that damages should not be awarded because the filing of the adversary proceeding was unnecessary.*

Sotelo argues that the bankruptcy court erred in concluding that the Debtor was required to file the adversary proceeding to stop Sotelo's conduct of pursuing

---

[45]      11 U.S.C. § 524(a)(2).

[46]      *Trial Tr.* at 28-31, 56, 81-84, *in* Appellant's App. at 167-70, 195, 220-23.

[47]      11 U.S.C. § 524(a)(2).

[48]      *Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1307-08 (10th Cir. 2008) (citing *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 506-07 (9th Cir. 2002)).

[49]      *Culley v. Castleberry (In re Culley)*, No. NM-05-105, 2006 WL 2091199, at *3-4 (10th Cir. BAP July 24, 2006); *see also* Collier on Bankruptcy ¶ 524.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

the State Court Action to collect the discharged debt.[50] The bankruptcy court made two findings addressing the reasonableness of the filing of the adversary proceeding. First, in the Order finding it appropriate to award damages in the form of lost wages and to award attorney fees and costs, the court stated: "[t]he issuance and service of the summons created a need for Peyrano to take action to protect himself and for his attorney to take action to effectuate the purpose of the discharge injunction."[51] Then, in the Attorney Fees Order, the bankruptcy court stated: "Peyrano was required to bring this litigation to stop Sotelo's conduct of pursuing the state court lawsuit to collect a discharged debt."[52]

These findings are fully supported by the record. Brown informed Heflin of the Debtor's discharge in two phone calls, including one on April 6, 2015, after the service of the Summons. Brown made a note during the April call, which was admitted into evidence. It states: "Sotelo adamant to continue w/litigation."[53] A motion to reopen the bankruptcy case was filed on June 19, 2015, and mailed to Sotelo. The motion's stated purpose was to file an adversary proceeding against Sotelo for violation of the discharge injunction. Yet, Brown was never informed by Sotelo or his counsel that the Debtor would be dismissed from the State Court Action. In fact, he was not dismissed until September 10, 2015, approximately two months after this adversary proceeding had been filed on July 16, 2015.

*Sotelo's Challenge to Actual Damages*

The bankruptcy court awarded the Debtor actual damages of $3,200 in wages lost while he devoted time to consult with his attorney and attend court-related hearings and meetings regarding the adversary proceeding. Sotelo challenges this

---

[50]    Appellant's Br. 21-22.

[51]    Order at 13, *in* Appellant's App. at 76.

[52]    Attorney Fees Order at 2, *in* Appellant's App. at 123.

[53]    Order at 5, in Appellant's App. at 68.

award based on the Debtor's failure to provide specific dates or identify the specific work he was unable to undertake, as well his failure to introduce any documentation regarding lost wages.[54] The Debtor argues the bankruptcy court's factual findings regarding actual damages are supported by the evidence at trial.[55]

The Debtor testified that he is an interstate delivery truck driver. He is unable to take just a few hours off work. Rather, in order to attend a meeting with his counsel or a court-related matter, he was required to turn down an entire driving assignment, which constituted a two day route, for which he would earn about $900. Debtor testified that in conjunction with the adversary proceeding he was required to turn down eight or nine routes.[56] He did not provide supporting documentation, identify the specific dates on which he lost work, or the specific routes he turned down. Sotelo, however, provided no evidence challenging the Debtor's testimony.

Damages awarded as sanctions are reviewed for abuse of discretion.[57] The bankruptcy court found the Debtor's testimony to be credible, but nevertheless awarded only about half of the claimed lost wages suggesting that the bankruptcy court carefully weighed the evidence. The bankruptcy court's determination was well within the bounds of permissible choice. The Court finds no abuse of discretion in awarding the Debtor actual damages.

*Sotelo's Challenge to Attorney Fees and Costs*

Although not clearly enumerated, Sotelo argues the bankruptcy court abused its discretion in awarding the attorney fees for three reasons. First, Sotelo alleges

---

[54]     Appellant's Br. 22-23.

[55]     Appellee's Br. 19.

[56]     *Trial Tr.* at 125-27, *in* Appellant's App. at 264-66.

[57]     *Diviney v. Nationsbank of Tex., N.A. (In re Diviney)*, 225 B.R. 762, 769 (10th Cir. BAP 1998) (citing *In re Edwards*, 214 B.R. 613, 618 (9th Cir. BAP 1997)).

the Attorney Fees were inequitable due to the low quality of the legal representation provided by Heflin and Heflin's bankruptcy, which precludes Sotelo from taking any action against her.[58] Next, Sotelo argues the Fee Application shows duplicative services performed by Brown and Colpitts and does not describe why it was necessary to have two lawyers present at various court appearances.[59] Finally, Sotelo argues a significant portion of the attorney fees were related to time spent solely in connection with the case against Heflin.[60]

The bankruptcy court is afforded wide discretion in determining the amount of an award of attorney fees[61] and it "has far better means of knowing what is just and reasonable than an appellate court."[62] The following addresses each of Sotelo's arguments in turn.

Sotelo's first argument is not persuasive. While the record indicates Heflin likely gave him bad (or no) advice and Sotelo cannot recover from Heflin because of her bankruptcy filing, this does not provide a defense to the award of attorney fees as a sanction for contempt. Sotelo provides no legal basis for his position. When making the award, the bankruptcy court was aware of the quality of Heflin's representation and her bankruptcy. Failure to reduce the award because of these circumstances is not an abuse of discretion. A reduction in the fees assessed against a creditor who violated the discharge injunction based upon the quality of legal advice received and an attorney's ability to compensate the creditor for any

---

[58] Appellant's Br. 25, 29-30.

[59] Appellant's Br. 28.

[60] Appellant's Br. 28-29.

[61] *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir.1998) (citing cases expressing trial court's superior vantage for determining reasonable fees to which appellate court must defer).

[62] *Id.* (quoting *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1201 (10th Cir. 1986)).

malpractice liability would undermine the efficacy of contempt proceedings as a means to protect a debtor's fresh start and to encourage compliance with a discharge order.

The bankruptcy court also did not abuse its discretion in awarding the attorney fees despite Sotelo's objection regarding alleged duplicative services. The bankruptcy court found no unreasonable or unnecessary duplication of efforts.[63] Specifically, the bankruptcy court found "[m]any of the time entries were for a half hour or less, indicating . . . that both attorneys were efficient in attending to this case and in preparing it for trial."[64] The Tenth Circuit has reasoned "[t]here is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for . . . the distinct contribution of each lawyer."[65] The record contains nothing to suggest any "violation of this commonsense principle" with respect to the time billed in connection with the adversary proceeding.[66] In this case, two attorneys were necessary since Brown, Debtor's primary bankruptcy lawyer, was a necessary witness.

Also, the bankruptcy court did not abuse its discretion in awarding a portion of the attorney fees related to time spent in connection with Heflin. The bankruptcy court found the time spent to depose Heflin was reasonable as she was a witness for both parties and "discovery regarding her actions was necessary for [the Debtor] to

---

[63] Attorney Fees Order at 4, *in* Appellant's App. at 125.

[64] *Id.*, *in* Appellant's App. at 125.

[65] *Anchondo v. Anderson, Crenshaw & Assoc.*, 616 F.3d 1098, 1105 (10th Cir. 2002) (quoting *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988)).

[66] *Id.*

present and succeed in his case."[67] Further, the bankruptcy court found "the fact that Heflin would be dismissed was unknown [ ] until the day of trial."[68] The record does not reveal anything to indicate the attorney fees were unreasonable or unnecessary. Accordingly, the bankruptcy court did not abuse its discretion in awarding the attorney fees.

## VI. CONCLUSION

The bankruptcy court did not err in its findings of fact or conclusions of law with respect to Sotelo's violation of the discharge injunction. The bankruptcy court did not abuse its discretion in awarding the Debtor actual damages and the attorney fees. Accordingly, the bankruptcy court's decision is hereby affirmed.

---

[67]     Attorney Fees Order at 5, *in* Appellant's App. at 126.

[68]     *Id.*, *in* Appellant's App. at 126.